[No. 3047-1.    Division One.    March 29, 1976.]

CRANE Co., *Appellant*, v. FREDERICK PAUL, ET AL, *Defendants*, JAMES A. HENRY, ET AL, *Respondents.*

*Ryan, Swanson, Hendel & Cleveland* and *Jerry Kindinger*, for appellant.

*James A. Henry*, for respondents.

JAMES, J.—As succinctly stated in appellant Crane Co.'s reply brief, "the controversy at bar involves the rights and liabilities flowing from the legal relationship between an attorney and client." The parties to the dispute are James A. Henry and the Crane Co. The suits, which each brought against the other, were consolidated for trial. Henry alleged that Crane owed him in excess of $7,000 for costs advanced and services rendered. Crane sought judgment for $3,818.88, an amount which Henry had collected for Crane and had deposited in his trust account.

Crane contends that it hired respondent James Henry "to perform legal services at the rate of $50 per hour"; that despite requests to provide monthly billing statements

based upon the agreed hourly rate, Henry failed to do so and "unilaterally determined his own fee . . ." Crane further asserts that Henry "converted [Crane's] trust funds to his own personal use against the adamant protestations of the client and in satisfaction of fees in dispute."

The only evidence presented at trial was the testimony of Henry, who was called by Crane as an adverse witness, and the exhibits, which consist primarily of correspondence and billing statements produced from Henry's files.

Henry's testimony reveals that he had been employed by Crane from 1964 to 1967 primarily for collection of accounts and foreclosure of material liens. In January 1970, he was approached by Crane's local agent to again undertake collection work for Crane. The exhibits reveal that Crane became dissatisfied with the manner in which Henry accounted for his activities and for the moneys he had collected. Henry ascribed most of the difficulties to the fact that Crane's personnel changed and that he received conflicting instructions concerning the submission of his statements to various offices of the company.

By letter of August 16, 1972 (exhibit No. 14), Henry was discharged and directed to deliver all of Crane's files to other local counsel. Demand was made upon him to remit all funds which he had collected. Correspondence between Henry and Crane's New York office developed the fact that Henry was holding $3,818.88 in his trust account and that he was claiming that he was owed $5,758.20 for fees and costs advanced. By letter of November 15, 1972, Henry transmitted his statement (exhibit No. 4) and his check for $3,818.88. By letter of November 21, 1972 (exhibit No. 9), Crane's New York attorney acknowledged receipt of the statement and the check but advised Henry that he would not be paid until he "itemized" his charges. The statements were in fact itemized as to costs, but the fees charged were not based upon an hourly rate. The costs advanced by Henry amount to $788.20. Henry reacted by stopping payment on his check and informing Crane by letter of his

intention to assert a lien upon the funds which he held (exhibit No. 11).

The trial judge found that Crane was indebted to Henry in the sum of $6,194.10 for costs advanced and services rendered. The trial judge further found that Henry had properly offset the $3,818.88 which he had collected for Crane. Judgment for Henry was granted in the sum of $2,375.22 with interest and statutory costs.

Crane's 15 assignments of error raise two issues: (1) Should not the trial judge have required Henry to establish his entitlement to fees at an hourly rate of $50? (2) Should not the trial judge have required Henry to transmit to Crane the $3,818.88 held in trust as a condition precedent to his maintaining an action to recover a judgment for services rendered?

In his oral opinion, the trial judge pointed out that although Crane indicated that it would prefer that Henry's billings be based upon an hourly rate of $50, no firm understanding was ever reached. The trial judge concluded that Henry was entitled to make a reasonable charge for services rendered. The trial judge expressly found that Henry's charges were "reasonable and consistent with the code of professional responsibility as set forth in D.R. 2-106." Finding of fact No. 6. He found that Crane was indebted to Henry in the sum of $5,758.20, which amount included the costs Henry had advanced. The findings are supported by substantial evidence and under the familiar rule of *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959), will not be disturbed on appeal.

The trial judge also concluded that Henry was entitled to offset the $3,818.88 which he had collected and held in his trust account. We agree.

Crane's argument concerning the $3,818.88 is that:

Attorneys who receive monies on behalf of clients hold such funds in trust and owe fiduciary obligations to their clients with respect thereto. Upon demand they must deliver over to clients monies held in trust.

This assertion is based upon Crane's reading of DR 9-102 of

the Code of Professional Responsibility which provides in part:

A lawyer shall:
(1) Promptly notify a client of the receipt of his funds
. . .
. . .
(3) Maintain complete records of all funds, . . . and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

(CPR) DR 9-102 (B).

Crane recognizes that by RCW 60.40.010, an attorney is given a lien "upon money in his hands belonging to his client." But Crane argues that "attorneys are [never] entitled to convert clients' trust funds to their own personal use as was the case here."

Crane's argument erroneously assumes that funds deposited in an attorney's trust account may not be subjected to an attorney's lien. The moneys collected by Henry were accounted for and were not commingled with his own. The uncontroverted evidence is that Henry stopped payment upon his check when it became apparent to him that his charges for services were disputed. Henry's action in stopping payment was an appropriate step to enforce his right to assert a lien upon the money. The mandate of (CPR) DR 9-102 is that an attorney promptly pay or deliver to his client funds "which the client is entitled to receive." (CPR) DR 9-102 (B) (4). As Crane recognizes, an attorney's lien is possessory in nature. When Henry elected to claim a lien, Crane was no longer "entitled to receive" the moneys. Had Crane chosen to do so, it could have, as provided by RCW 60.40.020 and RCW 60.40.030, invoked summary pro-

cedures to sequester the funds. *State ex rel. W.W. Robinson Co. v. Gilliam*, 94 Wash. 243, 161 P. 1194 (1917).

Affirmed.

WILLIAMS, C.J., and FARRIS, J., concur.