INTAGLIO SERVICE CORPORATION, Plaintiff, *v.* J. L. WILLIAMS & CO., INC., Defendant and Third-Party Plaintiff.—(McCarty Brothers, Inc., Third-Party Defendants; J. L. Williams & Co., Inc., Petitioner-Appellant; D. Calvin Sincock, Respondent-Appellee.)

First District (4th Division) No. 82—228

Opinion filed January 27, 1983.—Rehearing denied March 8, 1983.

Donald L. Johnson and Marty J. Schwartz, both of Chicago, for appellant.

D. Calvin Sincock, of Chicago, for appellee, *pro se.*

PRESIDING JUSTICE ROMITI delivered the opinion of the court:

D. Calvin Sincock, who had represented J. L. Williams & Co., Inc., in a lawsuit by Intaglio Service Corporation, withdrew from that litigation when he was not paid. Williams, while refusing to pay the fee, has since that time sought to force defendant to turn over his files in that case. Pursuant to that end, it has filed the present petition for a summary proceeding to compel defendant to surrender his files in exchange for such security as the trial court might determine just. The trial court ordered that Williams pay over $67,500 as security, $27,500 to be given directly to Sincock, and the rest to be held in escrow pending determination of the amount of attorney fees owed in an action already filed by the attorney. The order provided that it did not constitute a final determination as to whether there were fees due or the amount of such fees. Williams appealed. We affirm, holding:

(1) the order was final and appealable since it terminated the action filed by Williams;

(2) Williams waived any alleged error in the court's denial of the motion to dismiss when it failed to mention that order in its notice of appeal. In any event, since Williams failed to give the required 48-hour notice before filing the motion, the court did not abuse its discretion when it refused to dismiss the action unless Williams paid Sincock the attorney fees incurred in that 48-hour period;

(3) although by filing a suit to recover attorney fees Sincock became subject to discovery, he did not waive his right to his retaining lien;

(4) the trial court did not err in refusing Williams a jury trial since this is a summary proceeding; furthermore, Williams waived any right since it failed to make a jury demand when it filed its petition;

(5) the trial court did not err when it failed to allow Williams to put on its case since (a) there is nothing in the record indicating Williams sought to present any evidence, (b) there was no objection made at the time, (c) there was no offer of proof, and (d) even on appeal Williams has failed to suggest any relevant evidence which it might have introduced; and

(6) the evidence supports the judgment of the trial court.

Several years ago Intaglio Service Corporation filed a lawsuit against J. L. Williams & Co., Inc. Williams filed a third-party action against McCarty Brothers, Inc. Williams hired Sincock to represent it in the litigation. Sincock sent Williams bills as his work progressed;

Williams at that time neither objected to the amount charged nor paid it. Intaglio's case was dismissed by the trial court. Intaglio appealed and this court reversed in *Intaglio Service Corp. v. J. L. Williams & Co.* (1981), 95 Ill. App. 3d 708, 420 N.E.2d 634, and remanded the case for trial. During the pendency of the appeal, Sincock withdrew as counsel because he had not been paid. While still refusing to pay, Williams and his new counsel demanded the files in order to defend Intaglio's suit. Sincock refused to turn them over. He and his law firm filed a lawsuit entitled *Burditt & Calkins v. J. L. Williams & Co.* to recover costs advanced and fees for the over 1,350 hours of professional time spent. It appears from the record below that while not challenging the reasonableness of the amount charged per hour, Williams questioned whether the work was reasonable, contending that Sincock "churned" the filed and performed numerous unnecessary services.

While the *Burditt* case was pending, Williams on November 18, 1981, filed a petition to obtain the files so it could defend Intaglio's suit; this procedure involves a summary proceeding. (*Upgrade Corp. v. Michigan Carton Co.* (1980), 87 Ill. App. 3d 662, 410 N.E.2d 159.) Williams did not at that time ask for a jury trial. On November 23, 1981, the court, after hearing arguments of counsel, ruled that Sincock had a retaining lien on the files; the firm had advanced $11,471.40 in costs; Sincock had provided necessary legal services and their value was $65,000; Williams should pay $11,471.40 for advanced costs to Burditt and Calkins *instanter* and a hearing on the method of payment or security for the fees would be heard a week later. At the hearing Williams, through counsel, had admitted that there was no doubt the services were rendered and the expenditures were made. Williams had no witness to testify the fees were unreasonable. A detailed breakdown of all services rendered was admitted into evidence. Ten days later, Williams moved to vacate that part of the order stating that Sincock provided necessary legal fees in the value of $65,000. Sincock agreed to the motion on the condition they could have an immediate hearing or one within a short day. For some reason, not explained in the record, the trial judge vacated not only the paragraph objected to but the rest of the order as well. He also transferred the case to another judge for hearing. On that same day (December 10) the parties appeared before this second judge, but Williams stated it was unprepared for trial. It also expressed concern that any finding of fees would be binding on the trial court in *Burditt & Calkins*. Sincock wanted that issue determined in the present case since Williams had filed the action. He introduced into evidence at that time the veri-

fied complaint in *Burditt & Calkins* which set forth in detail the hours worked and expenditures incurred. The judge indicated at this time he would not go through a useless hearing and his determination would be binding on Williams.

On December 14, 1981, Williams filed a jury demand. The trial court denied the demand since this was a summary proceeding. Williams again reiterated that it wanted a determination that would not be binding on the court in *Burditt & Calkins*; Sincock objected contending he should not be required to try his case more than once. The trial court said it was merely going to make a summary determination of the value of the services and then do something that would protect the lien. The court then continued the hearing until December 16, 1981.

On December 16, 1981, Williams, after it had made two motions which were denied, moved first orally, and then in writing without any prior notice being given as required by rule, to dismiss the case without prejudice. Section 52(1) of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 52(1)) provides:

"(1) The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or his attorney, and upon payment of costs, dismiss his action or any part thereof as to any defendant, without prejudice, by order filed in the cause. Thereafter he may dismiss, only on terms fixed by the court (a) upon filing a stipulation to that effect signed by the defendant, or (b) on motion specifying the ground for dismissal, which shall be supported by affidavit or other proof. After a counterclaim has been pleaded by a defendant no dismissal may be had as to him except by his consent."

Since Williams had failed to give the required 48 hour notice and Sincock had incurred $2,582.50 attorney and witness fees in this period, the trial court conditioned any dismissal on payment of these fees. Williams instead elected to continue with the case.

On January 6, 1982, the hearing was finally held. A witness for Sincock testified that he was familiar with Sincock's work in this case and that it was not only necessary but of superlative quality. The depositions taken were skillful and without waste of time and were very valuable in the case. Sincock's second witness produced various time records and time sheets, none of which appear to be in the record on appeal. The hearing was then adjourned until the afternoon. Instead of recommencing the hearing in the afternoon, however, the parties discussed means of posting security. At that time Williams' counsel indicated that they did not need any further procedures in-

volving the case. After much discussion the court entered the following order on January 7, 1981:

"1. Mr. D. Calvin Sincock (hereinafter 'Sincock') has an existing and valid common law retaining lien on certain files generated in this matter and other matters by Sincock during the course of his representation of J. L. Williams & Co., Inc. The files which J. L. Williams & Co., Inc. seeks from Sincock consist of the fruits of Sincock's labor and do not include J. L. Williams & Co., Inc.'s property.

2. That as protection and security for payment of fees due Sincock and as a substitute for his retaining lien, the Court hereby orders *** J. L. Williams & Co., Inc. to pay Sincock *** the sum of $27,500.00. ***

3. Within seven days, J. L. Williams & Co., Inc. shall further deposit the sum of $40,000.00 into an escrow account to be established at Chicago Title and Trust Company, Chicago, Illinois. *** Chicago Title and Trust Company, as escrow agent, shall invest the said $40,000.00 and reinvest the income received thereon in such *** investments *** as Sincock may from time to time direct. *** The $40,000 shall be held in escrow pending the final resolution (including all appeals) of a certain lawsuit now pending in the Circuit Court of Cook County, Law Division, entitled Burditt and Calkins, et al. v. J. L. Williams & Co., Inc., Court No. 81 L 26570. After termination of the said litigation (Burditt and Calkins, et al. v. J. L. Williams & Co., Inc.), the escrow agent shall distribute the principal and accumulated interest as follows:

(a) If Sincock receives by judgment, award, settlement or otherwise $67,500.00 or more, the entire principal and accumulated interest shall be paid to Sincock. In the event the principal paid to Sincock plus $27,500.00 is insufficient to pay the amount awarded to Sincock, J. L. Williams & Co., Inc. shall pay to Sincock the full amount of the deficiency.

(b) If Sincock receives by judgment, award, settlement or otherwise less than $67,500.00 but more than $27,500.00, the amount of the judgment award or settlement, reduced by $27,500.00 shall be paid to Sincock from the original $40,000.00 principal with the balance of the original $40,000.00 principal paid to J. L. Williams & Co., Inc. The accumulative interest shall be paid to Sincock and J. L. Williams & Co., Inc. in the same ratio as the principal is paid to

Sincock and J. L. Williams & Co., Inc.

(c) If Sincock receives by judgment, award, settlement, or otherwise $27,500.00 or less, the principal and all accumulated interest shall be paid to J. L. Williams & Co., Inc., and Sincock shall pay to J. L. Williams and Co., Inc. the difference between $27,500.00 and the amount of the judgment, award or settlement.

4. Upon making the payments of $27,500.00 and $40,000.00 required by Paragraphs 2 and 3 hereof, J. L. Williams & Co., Inc. shall have the right to inspect and copy the files maintained by Sincock in his possession or in the possession of his counsel, Rooks, Pitts, Fullagar and Poust, on account of Sincock's representation of J. L. Williams & Co., Inc. in this matter. Said copying shall be at the expense of J. L. Williams & Co., Inc. and said inspection shall be at reasonable times to be agreed upon by the parties and shall take place at the offices of Sincock's counsel. The original of the said files shall at all times remain in the possession of Sincock or his counsel.

5. Entry of this order does not constitute a final determination as to whether there are fees due Sincock or the amount of any such fees, and this order may not be asserted as being *res judicata* or constituting collateral estoppel in the matter of Burditt and Calkins, et al. v. J. L. Williams & Co., Inc. 81 L 26570 or in any other litigation involving the issues raised here.

6. This Court retains jurisdiction of this matter for the supervision and enforcement of this order.

7. The Court further finds that no just reason exists to delay enforcement of or appeal from this order."

On January 20, 1982, Williams sought unsuccessfully to have the order modified to allow it to post a letter of credit rather than deposit $40,000 into escrow. Williams at that time made no suggestion it had been denied an opportunity to present evidence.

Williams then appealed. In its notice of appeal it appealed from the order of January 7 providing that Sincock had a retaining lien and ordering Williams to pay Sincock $27,000 and deposit $40,000 in escrow and from the order of January 20. Williams asked that these orders be vacated and the case remanded with instructions that the trial court find there was no retaining lien and require delivery of the files without security or, in the alternative, if Sincock was entitled to security, the order be vacated and the case remanded with instructions to modify its order.

## I

■ Sincock contends that the order is not appealable, despite the entry of a Rule 304(a) order (73 Ill. 2d R. 304(a)), because it leaves unresolved the real controversy, the fees due the lienholder. In making this argument, Sincock overlooks the fact that that was not an issue in this case; that the trial court clearly, deliberately and carefully excluded it as an issue since it was being litigated in the action for fees. The only issues in the present action were those presented in Williams' petition; whether Sincock had a retaining lien, whether Williams could force him to turn over the files and, if so, under what conditions short of total payment of the fees charged could Sincock be forced to turn these over. The trial court did finally determine these issues. The fact that the final disposition of the funds required to be posted as security must wait until the termination of a completely separate action is immaterial, since that is a mere accounting matter. (*Barnhart v. Barnhart* (1953), 415 Ill. 303, 114 N.E.2d 378; *2416 Corp. v. First National Bank* (1980), 91 Ill. App. 3d 961, 415 N.E.2d 420, *appeal denied* (1981), 83 Ill. 2d 575.) Nor did the fact that the court retained jurisdiction to supervise enforcement destroy the finality of the order. *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 255 N.E.2d 900, *cert. denied* (1970), 400 U.S. 940, 27 L. Ed. 2d 244, 91 S. Ct. 232; *Moss v. Waytz* (1955), 4 Ill. App. 2d 296, 124 N.E.2d 91.

## II

■■ ■ Williams contends on appeal that the trial court erred in denying its motion to dismiss. There was no mention of that order in its notice of appeal and the relief sought in that notice is totally inconsistent with any contention the case should have been dismissed. This court only has jurisdiction of those matters raised in the notice of appeal; thus the order denying the motion to dismiss is not properly before us. (*Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.* (1979), 78 Ill. 2d 56, 398 N.E.2d 3; *Moseley v. Goldstone* (1980), 89 Ill. App. 3d 360, 411 N.E.2d 1145; *Conley v. Peoples Gas, Light & Coke Co.* (1980), 82 Ill. App. 3d 1094, 403 N.E.2d 625; *Lewanski v. Lewanski* (1978), 59 Ill. App. 3d 805, 375 N.E.2d 961; *Mooring v. Village of Glen Ellyn* (1978), 57 Ill. App. 3d 329, 373 N.E.2d 35, *appeal denied* (1978), 71 Ill. 2d 609.) In any event we note that even if we assume, and we cannot, that despite the trial and order on November 23, 1981, there had been no "trial or hearing" precluding voluntary dismissal as of right under section 52, the trial court did not err in denying the motion since Williams failed to give prior notice of the motion as required by rule. Williams' reliance on the court's decision

in *In re Marriage of Brown* (1980), 86 Ill. App. 3d 964, 410 N.E.2d 79, *appeal denied* (1980), 81 Ill. 2d 590, is misplaced. In that case the trial court granted the petitioner's motion to dismiss despite the lack of a full five days' notice. Respondent contended that it was legally impermissible for the trial court to enter the order since the notice was defective. We affirmed the dismissal pointing out that the trial judge had dispelled any prejudice suffered by respondent by continuing the hearing date. In the present case Sincock was prejudiced by incurring extraordinary attorney fees in the 48 hour period before the hearing. These expenses would not have been incurred had notice been properly given. The trial court sought to dispel the prejudice by charging these expenses to Williams. Williams elected instead to withdraw the motion. Under the circumstances there was no error.

## III

■ Williams next contends that Sincock waived his retaining lien when he filed his suit for attorney fees, citing *Ross v. Wells* (1955), 6 Ill. App. 2d 304, 127 N.E.2d 519. But *Ross* merely held that when an attorney files a suit for fees and the client contests the amount of the fees, the client is entitled to discovery *in that action* because, consistent with the duty of full and complete disclosure, the attorney has a duty to produce the books and records in that action that directly bear on the claim for fees. The court nowhere held or even suggested that the attorney waived its lien. Except in the action for attorney fees, and as we have already noted that suit is not involved in this litigation, the attorney has a right to his retaining lien until his fee is paid or proper and sufficient security is given. *Upgrade Corp. v. Michigan Carton Co.* (1980), 87 Ill. App. 3d 662, 410 N.E.2d 159.

## IV

■ Williams next contends that it was denied due process because the judge denied its request for a jury trial. Since a proceeding to post security in lieu of a retaining lien is a summary proceeding (*Upgrade Corp. v. Michigan Carton Co.* (1980), 87 Ill. App. 3d 662, 410 N.E.2d 159), Williams was not entitled to a jury trial when it elected to pursue this route. But even if it had been entitled to a jury trial, it waived that right when it failed to file a jury demand with the petition. (Ill. Rev. Stat. 1981, ch. 110, par. 64(1).) Williams argues that its belated motion was proper because under section 64(1) if an action is filed seeking equitable relief and the court thereafter determines that one or more of the parties are entitled to trial by jury, the plaintiff within three days thereafter may file a jury demand. But the

court never made such a finding so that provision is inapplicable. Williams also contends that it was entitled to a jury trial because the trial court decided to try the issue of the reasonableness of the fees. While under *Upgrade* the trial court was entitled to make a *summary* determination of the value of the services, in fact the trial court elected not to do so because that issue was and is awaiting determination in another action. The trial court merely determined those issues set forth in the plaintiff's petition.

## V

Finally, Williams argues that it was denied due process because after hearing two of Sincock's witnesses the court said it had heard enough to set the amount of security required and did not allow Williams to present its evidence. This court has carefully searched the record but can find no such impropriety. There is nothing in the record showing or even tending to show that the court announced it had heard enough or summarily terminated the hearing or, on the other hand, that Williams tendered any witnesses, made any offer of proof, as required, or made any complaint at the time that it was not allowed to present its case. Accordingly, even assuming Williams had any relevant evidence to produce, its complaint on appeal is untimely.

## VI

In its notice of appeal, Williams asked this court to reduce the amount of security. Williams did not repeat that request in its brief so it would appear to be waived. In any event, we conclude that the court's determination of the amount of security to be posted was supported by sufficient evidence in light of the testimony of Sincock's witnesses at trial and the record attached to the copy of Sincock's complaint which was part of the record.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.