**LUCKY–GOLDSTAR INTERNATIONAL (AMERICA), INC., Plaintiff,**

v.

**INTERNATIONAL MANUFACTURING SALES CO., INC., et al., Defendants.**

No. 84 C 9941.

United States District Court, N.D. Illinois, E.D.

March 10, 1986.

---

R. Dickey Hamilton, Catherine H. McMahon, Barry A. Miller, Miller, Shakman, Nathan & Hamilton, Chicago, Ill., for plaintiff.

E. James Gildea and Wm. D. Kelly, (Pro Se-Deponents only), Robert M. Wigoda, Conklin & Adler, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

Attorneys Conklin & Adler, Ltd. ("C & A") and Robert Wigoda have filed this motion to quash a subpoena served upon them for the production of records in their possession, which are the property of their former client International Manufacturing and Sales Company, Inc. ("IMS"), but over which C & A claims an attorney's retaining lien. For the reasons stated below, the motion to quash is denied. This denial, however, is conditioned on IMS posting security in the amount C & A claims IMS owes it in attorney fees.

FACTS

Plaintiff Lucky-Goldstar International (America), Inc. ("Lucky") brought a breach of contract action against IMS and Dan Andre (collectively "defendants") in November 1984. C & A represented defendants in this action by first filing an answer to Lucky's complaint and later a counterclaim against Lucky. On May 22, 1985, with leave of this court, C & A withdrew as counsel for defendants. The defendants consented to the withdrawal, and

there is no suggestion that C & A refused to proceed without just cause or was discharged because of unprofessional conduct.[1]

█ The defendants retained other counsel and continued in their defense and counterclaim against Lucky. In July 1985, Lucky requested the defendants to produce the records at issue here pursuant to Fed. R.Civ.P. 34. At various times after Lucky's discovery request, the defendants requested the documents from C & A, but C & A asserted that because IMS still owes C & A substantial attorney fees, C & A has an attorney's retaining lien on the documents. C & A therefore refused the defendants' requests. In September 1985, Lucky filed a motion pursuant to Fed.R. Civ.P. 37 to compel the defendants to produce those documents and for sanctions for failure to produce them. Six days later, the defendants subpoenaed the documents from C & A. C & A then filed this motion to quash, and the issue has now been fully briefed by the parties.[2]

## DISCUSSION

█ C & A correctly asserts that Illinois common law recognizes an attorney's retaining lien. *Intaglio Service Corp. v. J.L. Williams & Co.*, 112 Ill.App.3d 824, 832, 68 Ill.Dec. 347, 352, 445 N.E.2d 1200, 1205 (1st Dist.1983); *Upgrade Corp. v. Michigan Carton Co.*, 87 Ill.App.3d 662, 664–65, 43 Ill.Dec. 159, 161, 410 N.E.2d 159, 161 (1st Dist.1980).[3] A retaining lien enables an attorney to retain papers, money, securities, and property received from his client in the course of his professional employment. *Upgrade*, 410 N.E.2d at 161, 43 Ill.Dec. at 161. It is termed a "passive" lien, since it cannot be actively enforced through foreclosure proceedings and rests wholly upon the right to retain possession until the bill is paid. *Id.*[4] The purpose of such a lien is to prevent the client from refusing to pay charges justly due. *Id.* Because the lien would lose its force if the client were permitted to use the papers held by the attorney, the rule in Illinois is that an attorney has a right to his retaining lien until the parties settle their fee dispute or the client posts adequate security for payment. *Id.* at 161–62, 43 Ill.Dec. at 161–62. *Intaglio Service*, 445 N.E.2d at 1205, 68 Ill.Dec. at 352.[5] In fact, courts in at least one jurisdiction have held that forcing

---

1. If an attorney withdraws without good cause or is found to have committed professional misconduct in connection with the case, his attorney's retaining lien is forfeited. *Burnett v. State*, 642 S.W.2d 765 (Tex.Crim.1982); *People ex rel. McFarlane v. Harthun*, 195 Colo. 38, 581 P.2d 716 (1978); *In re Kaufman*, 93 Nev. 452, 567 P.2d 957 (1977).

2. The instant case should not be confused with a case in which the attorney files suit against the client for his attorney fees, and in order to contest the amount of the fees, the client seeks discovery of documents subject to the lien. *See Jenkins v. Eighth Judicial District Court*, 676 P.2d 1201 (Colo.1984); *Intaglio Services*, 445 N.E.2d at 1201–1204, 68 Ill.Dec. at 348–51; *Ross v. Wells*, 6 Ill.App.2d 304, 127 N.E.2d 519 (1st Dist.1955). In such a case, the client is entitled to discovery because, consistent with the duty of full and fair disclosure, the attorney has a duty to produce the papers and records that directly bear on the claim for fees. *Jenkins*, 676 P.2d at 1204–1205; *Intaglio Services*, 445 N.E.2d at 1205, 68 Ill.Dec. at 352; *Ross*, 127 N.E.2d at 521.

3. Although federal common law does not recognize the attorney's retaining lien, the general rule is that federal courts apply the statutory

and common law attorney's liens of the state in which the court sits. *In re Southwest Restaurant Systems, Inc.*, 607 F.2d 1243, 1247 (9th Cir.), *cert. denied*, 444 U.S. 1081, 100 S.Ct. 1035, 62 L.Ed.2d 765 (1979); *Adams, George, Lee, Schulte & Ward v. Westinghouse*, 597 F.2d 570, 573 (5th Cir.1979).

4. The attorney's retaining lien should not be confused with a charging or special lien. A charging lien is a non-possessory lien placed on the judgment the lawyer obtained for the client. The rationale behind this type of lien is that the client has benefitted from the lawyer's services and therefore the lawyer is entitled to benefit from the judgment the lawyer has secured. American Bar Association/Bureau of National Affairs, Inc., *Lawyer's Manual on Professional Conduct ("Lawyer's Manual")*, at 41:2101 (1984). The charging lien is statutorily created in most states, *id.*, including Illinois. *See* Ill.Ann.Stat. ch. 13, § 14 (Smith-Hurd Supp.1983).

5. Many states follow this rule. *See, e.g., Southwest Restaurant Systems*, 607 F.2d at 1247 (Arizona law); *Crane Co. v. Paul*, 15 Wash.App. 212, 548 P.2d 337, 340 (1976); *Morse v. Eighth Judicial District Court*, 65 Nev. 275, 195 P.2d 199 (1948); *Steiner v. Stein*, 141 N.J.Eq. 478, 58 A.2d

an attorney to return papers subject to a retaining lien prior to settlement of the dispute or the posting of security is an abuse of discretion. *Pomerantz v. Schandler,* 704 F.2d 681, 683 (2d Cir.1983) (New York law); *Tri-Ex Enterprises v. Morgan Guaranty Trust Co.,* 583 F.Supp. 1116, 1117 (D.C.N.Y.1984).

While the defendants concede that Illinois recognizes an attorney's right to a retaining lien, they correctly point out that Illinois courts have not addressed the apparent conflict between that common law right and an attorney's duties to his former client under the Code of Professional Responsibility of the American Bar Association ("ABA Code") and of the Illinois Supreme Court Rules ("Illinois Code").

Disciplinary Rule 2–110(A)(2) of the ABA and Illinois Codes provides that

> ... a lawyer should not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including ... delivering to the client all papers and property to which the client is entitled....

Similarly, Disciplinary Rule 9–102(B)(4) of the ABA and Illinois Codes provides:

> A lawyer shall ... [p]romptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

In addition, Ethical Consideration 2–32 of the ABA Code states:

> A lawyer should not withdraw without considering carefully and endeavoring to minimize the possible adverse effect on

the rights of his client and the possibility of prejudice to his client as a result of his withdrawal.

The codes, however, do not provide an attorney guidelines to determine when a client is *"entitled"* to receive funds or properties in the attorney's possession. *See* ABA Standing Committee on Ethics and Professional Responsibility ("ABA Committee"), Informal Opinion 1461 (Nov. 11, 1980) ("Informal Op. 1461"); American Bar Foundation, Annotated Code of Professional Responsibility 448 (1979). In fact, the ABA Committee has expressly declined to provide such guidelines. *See* Informal Op. 1461.

In the context of an attorney's retaining lien, we believe the "entitled to" standard begs the question. If the attorney is properly asserting the retaining lien, the client is *not entitled* to the property, and to that extent the disciplinary rules quoted above do not apply. If the attorney is not properly asserting the lien, the client *is entitled* to the property, and the rules do apply. *See* Committee on Ethics of the Maryland State Bar Association, Opinions 81–33, 81–35 (Feb. 24, 1981), in *Lawyer's Manual* at 801:4308; *Crane Co. v. Paul,* 15 Wash. App. 212, 548 P.2d 337, 340 (1976). In other words, the rules by themselves simply do not advance the ball.[6]

■ We are therefore faced with a direct conflict between two well-established principles: An attorney *may* hold a client's property under an attorney's retaining lien, but a client *should* have his property returned to him when his attorney withdraws. Although both principles are well established, neither is absolute. Informal

---

102 (1948); *Leviten v. Sandbank,* 291 N.Y. 352, 52 N.E.2d 898 (1943); *Collins v. Thuringer,* 92 Colo. 433, 21 P.2d 709 (1933).

**6.** Our conclusion that the disciplinary rules and ethical considerations do not themselves resolve this conflict is supported by Disciplinary Rule 5–103(A)(1) of both Codes and Ethical Consideration 5–7 of the ABA Code. Those provisions suggest that an attorney's lien is consistent with an attorney's ethical obligations.

> A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except

that he may ... [a]quire a lien granted by law to secure his fee or expenses. DR5–103(A)(1). [I]t is not improper for a lawyer to protect his right to collect a fee for his services by the assertion of legally permissible liens, even though by doing so he may acquire an interest in the outcome of litigation. EC5–7.

In fact, these statements would end the matter if we did not believe that the drafters intended their language to apply only to charging or special liens, and not to retaining liens. *See supra* note 4.

Op. 1461. Both are judicial devices, the former for the protection of the attorney, the latter for the protection of the client. *See Steiner v. Stein,* 141 N.J.Eq. 478, 58 A.2d 102, 104 (1948).

There is an equally important third interest—effective judicial administration. The conflict between the withdrawn attorney and the former client should not be allowed to delay the underlying action. In attempting to move the underlying action forward and accommodate these competing interests, the court should not interfere unnecessarily in the dispute between the lawyer and client. The fee dispute is something the lawyer and client should work out in the proper state forum. *See Upgrade,* 410 N.E.2d at 162, 43 Ill.Dec. at 162 (attorney entitled to summary disposition *in state court* fixing the value of his services so that such amount can be paid or adequately secured). We perceive no federal jurisdiction, at least in this diversity case, to entertain the dispute. *See Kanzelberger v. Kanzelberger,* 782 F.2d 774, 777 (7th Cir. 1986) ("the federal courts are obliged to police the constitutional and statutory limits on their jurisdiction"). Therefore, the aim should be to provide access to the documents necessary to the underlying action without prejudicing the rights of either party to a controversy we have no authority to resolve.

As a starting point, we agree with the ABA Committee that

> [a] proper sense of regard for the nature of the profession, and for the Model Code ..., should lead a lawyer to evaluate his financial interest in light of the interests of the client when he is making a decision to invoke an attorney's lien to which he may be entitled under law.
>
> \*    \*    \*    \*    \*    \*
>
> Mere existence of a legal right does not entitle a lawyer to stand on that right if ethical considerations require that he forego it. For instance, EC2–23 exhorts lawyers to forego a legal right to "... sue a client for a fee unless necessary to prevent fraud or gross imposition by the client." The same standard

should be applied in determining whether or not to exercise an attorney's lien. Informal Op. 1461.

The opinion goes on to provide guidelines for attorneys to apply the fraud or gross imposition standard in deciding whether to invoke a retaining lien.

> The application of [the fraud or gross imposition] standard requires the lawyer to evaluate his or her interests against interests of the client and of others who would be substantially and adversely affected by assertion of the lien. The lawyer should take into account [1] the financial situation of the client, [2] the sophistication of the client in dealing with lawyers, [3] whether the fee is reasonable, [4] whether the client clearly understood and agreed to pay the amount now owing, [5] whether imposition of the retaining lien would prejudice the important rights or interests of the client or of other parties, [6] whether failure to impose the lien would result in fraud or gross imposition by the client, and [7] whether there are less stringent means by which the matter can be resolved or by which the amount owing can be secured. Even though a lawyer may be justified in declining to devote further time and expense in behalf of a non-paying client, it does not follow in all cases that he is ethically justified in exercising an attorney's lien.

*Id.*

██ If, for example, exercise of the retaining lien would prejudice the client's ability to defend against a criminal charge, or to assert or defend a similarly important personal liberty, the lawyer should ordinarily forego the lien. *See id.; Hauptmann v. Fawcett,* 243 App.Div. 613, 276 N.Y.S. 523, *modified,* 243 App.Div. 616, 277 N.Y.S. 631 (2d Dept.1935)(former client on trial for murder); *People v. Altvater,* 78 Misc.2d 24, 355 N.Y.S.2d 736 (1974)(same). *But see also Pomerantz,* 704 F.2d at 683 (former client still must make clear showing of need, prejudice, and inability to pay)(dictum).

■ Similarly, if the court, or other parties, or the public interest would be adversely affected by the lien, the lawyer should be hesitant to invoke it. *See* Informal Op. 1461; *In re Eichenbaum's Will,* 16 Misc.2d 655, 184 N.Y.S.2d 283 (1959)(lien yields to "public policy of expediting the probate of wills"). *Cf. Tri-Ex Enterprises,* 583 F.Supp. at 1117–18 (effect of lien on other parties).

■ Financial inability of the client to pay the amount owing should also cause the lawyer to forego the lien because the failure to pay the fee is not deliberate and thus does not constitute fraud or gross imposition by the client. The lawyer should forego the lien if he knew of the client's financial inability at the beginning or if he failed to assure agreement as to the amount or method of calculating the fee. *See* Informal Op. at 1461; State Bar of New Mexico Advisory Opinions Committee, Opinion 1984-4 (August 8, 1984), in *Lawyer's Manual* at 801:6003; *Atlantic & Great Lakes S.S. Corp. v. Steelmet, Inc.,* 431 F.Supp. 327, 328 (D.C.N.Y.1977)(failure

to arrange for payment of bills waived lien).

■ Assertion of the lien would be ethically justified when the client is financially able but deliberately refuses to pay a fee that was clearly agreed upon and is due, since this conduct would constitute gross imposition by the client. *See* Informal Op. 1461; Committee on Professional and Judicial Ethics of State Bar of Michigan, Opinion CI–930 (May 4, 1983), in *Lawyer's Manual* at 801:4867.

In the instant case, there is nothing to indicate that C & A's decision to invoke the lien was improper.[7] This case does not involve a criminal charge or an important personal liberty. IMS and Andre were sophisticated business clients of C & A. They do not claim in their briefs that they are unable to pay the fee. Nor do they claim that the parties did not have an agreement as to fees or that they did not understand the agreement.[8]

■ We therefore believe the proper way to make the documents available in this litigation without unnecessarily im-

---

7. In fact, Attorney Robert Wigoda made clear to the court that C & A would waive its lien and turn over the documents if the court desired it to do so. We informed Mr. Wigoda that we did not want C & A to surrender the documents merely to satisfy the court's desire to expedite the underlying case. Instead, we undertook to determine what course is proper under the law applicable to these circumstances.

8. The only factor that might make assertion of the lien inappropriate in this case is that the court and another party are adversely affected. We agree with the defendants that C & A's withholding of IMS's records hinders Lucky's legitimate discovery request, *see* Respondent's Memorandum in Opposition at 8, and that consequently Lucky's interest in the documents "must suffer along" with that of IMS. *Id.* However, IMS's concern for Lucky's discovery request must be placed in the proper perspective. We believe IMS is more concerned about Lucky's motion to dismiss IMS's counterclaim for its failure to produce the documents than it is with Lucky's inability to see the documents. We do not need to decide whether dismissal of the counterclaim under these circumstances would be a proper use of the court's discretion under the sanction provisions of Federal Rule of Civil Procedure 37, but we believe that the pres-

ence of a third party should not, without more, make enforcement of the retaining lien inappropriate.

As we have already stated, a paramount concern of the court is delay in the underlying litigation. *See supra* p. 1063. That concern is even greater when, as here, the documents subject to the lien have been requested by the third party, Lucky. But IMS should not be able to destroy the value of C & A's lien by riding on the coattails of the inconvenience to Lucky. *Tri-Ex,* 583 F.Supp. at 1118. This is especially true when an approach less prejudicial to C & A than requiring it to forfeit its lien is available. As stated in the body of our opinion, we believe the proper course is to require IMS to post adequate security for payment of the disputed fee.

Defendants also argue that because the property being held by C & A has no intrinsic value, the lien is void, relying on Academy of *California Optometrists, Inc. v. Superior Court of Sacremento County,* 51 Cal.App.3d 999, 124 Cal.Rptr. 668 (1975). We reject this contention. For the reasons stated in *Brauer v. Hotel Associates, Inc.,* 40 N.J. 415, 192 A.2d 831, 835 (1963), *cert. denied sub nom. In re Brauer,* 387 U.S. 944, 87 S.Ct. 2077, 18 L.Ed.2d 1330 (1967), we do not believe the intrinsic value of the property in any way affects an attorney's right to invoke the lien.

pinging upon the rights of the parties to the fee dispute is to require IMS to post security in the amount of C & A's fee claim, in return for which C & A will be required to produce the documents. This is the approach that has been taken in the controlling Illinois cases, *Upgrade*, 410 N.E.2d at 161–62, 43 Ill.Dec. at 161–62, and *Intaglio Service*, 445 N.E.2d at 1205, 68 Ill.Dec. at 352, as well as in many other states. *See supra* note 5.

In *Upgrade*, one of plaintiff's attorneys withdrew, and the plaintiff's remaining attorney petitioned the court to order the withdrawn attorney to turn over all of the files concerning the pending litigation. The appellate court upheld the lower court's order that the attorney turn over the litigation files, but further held that the production order should not be given effect until the fee was paid or a satisfactory security was posted. *Upgrade*, 410 N.E.2d at 160, 162, 43 Ill.Dec. at 160, 162.

Similarly, in *Intaglio Service*, defendant's attorney withdrew, and the defendant and his new attorney petitioned the court to order the withdrawn attorney to turn over the files in exchange for security the court determined to be just. The trial court ordered the defendant to pay $27,-500.00 directly to his former attorney and place $40,000.00 in an escrow account pending resolution of a separate action the attorney had filed to recover his fee. The appellate court affirmed. *Intaglio Service*, 445 N.E.2d at 1201–04, 68 Ill.Dec. at 348–51.

CONCLUSION

We therefore deny C & A's motion to quash the subpoena. This denial, however, is conditioned on defendants providing security in place of the retaining lien. The parties should establish a method of posting the security similar to that required by the trial court in *Intaglio Service*, 445 N.E.2d at 1203, 68 Ill.Dec. at 350. The parties should report as to the security agreed upon at the status hearing presently set for March 18, 1986.