**Mark ANTHONY, Plaintiff,**

v.

**Carl BITLER, et al., Defendants.**

**No. 95 C 3820.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 22, 1996.

---

Peter J. Segal, Segal & Segal, Chicago, IL, for plaintiff.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the Motion to Enforce Subpoena Duces Tecum of Plaintiff Mark Anthony. Anthony is attempting to subpoena documents from a law firm and use the documents in his civil case in the Southern District of New York, *Anthony v. Bitler*, No. 93 6917. The law firm, McBride, Baker & Coles ("MBC"), contends that it need not honor the subpoena because it has an attorney retention lien over the documents. For the reasons that follow, the motion is denied.

As a preliminary matter, although not disputed, the court marks that it has jurisdiction to decide the matter. Federal Rule of Civil Procedure 45(a)(2) provides that "a subpoena for production or inspection shall issue from the court for the district in which the production or inspection is to be made." And, in order to quash or modify the subpoena, a party must seek relief from the issuing court. Fed.R.Civ.P. 45(c)(3)(A); *see Federal*

*Subpoena Practice*, 139 F.R.D. 197, 205 (discussing subpoenas generally). The subpoena in question issued from the Northern District of Illinois. The court notes that, in some circuits, it is an abuse of discretion to force production of documents under a retaining lien. *See Pomerantz v. Schandler*, 704 F.2d 681, 683 (2nd Cir.1983); *Lucky–Goldstar v. Int'l Mfg. Sales Co.*, 636 F.Supp. 1059, 1061–62 (N.D.Ill.1986). The parties request that the court resolve whether the subpoena requires disclosure of protected matter in violation of Rule 45(c)(3)(A)(iii).

The court takes the following from MBC's Response. Both Anthony and Bitler were directors and shareholders of First American Holding Corporation ("Holding"), a Delaware corporation, and allegedly shareholders of First American Capital Resources ("Capital"), an Illinois corporation. The New York litigation upon which underlies this subpoena, relates to Anthony's claim that Bitler ousted Anthony as a director of Capital without authority. MBC has served as counsel to both Anthony and Bitler personally, and to both Capital and Holding as corporations. All clients owe MBC for past legal services, which aggregate approximately $300,000. MBC has secured an attorney retention lien over the files and corporate records in its possession which relate to the representation. Anthony does not dispute the validity of the lien, but argues that it should not be enforced.

Attorney liens come in two flavors: retaining liens, and charging (or special) liens. *See Lucky*, 636 F.Supp. at 1061 n. 4. This motion involves the former. A retaining lien attaches to all property, documents, etc. of a client that comes into an attorney's hands in the course of his professional employment. Janet Fairchild, *Attorney's Retaining Lien as Affected by Action to Collect Legal Fees*, 45 A.L.R.4th 198, 199 (1986). A retaining lien cannot be actively enforced, thus, "its primary benefit to the attorney lies in the inconvenience to the client of being unable to secure access to his papers and funds." *Id.* at 200. Because Illinois common law recognizes an attorney's retaining lien, so will the federal court. *Lucky*, 636 F.Supp. at 1061 n. 3. In Illinois, a retaining lien will be

enforced until the fee dispute is settled or until the client posts adequate security for payment. *Jernryd v. Nilsson,* 117 F.R.D. 416, 417 (N.D.Ill.1987). Moreover, retaining liens are afforded substantial weight. *See Tri–Ex Enter. v. Morgan Guar. Trust Co.,* 583 F.Supp. 1116, 1118 (S.D.N.Y.1984) (referring to the strict view in that circuit concerning the "impenetrability of an attorney's lien"). An attorney's retaining lien may be curbed, though, if the documents at issue are needed for the administration of justice. *Browy v. Gay,* 527 F.2d 799, 802, (7th Cir. 1976).

█ Anthony argues, first, that the retaining lien does not affect him (a third party) because MBC's fee dispute relates to the corporations as clients, rather than to Anthony personally. Anthony reasons that honoring the lien would be similar to piercing the corporate veil, in that it would impose the legal responsibilities of the corporation upon its management. Second, he asserts that the administration of justice requires the court to enforce the subpoena because, without the documents, Anthony will not be able to establish his claim against Bitler. Third, Anthony argues that honoring the lien would be bad precedent in that it would permit a corporation to escape liability for injuring its officers by failing to pay legal fees to a law firm.

█ The Seventh Circuit Court of Appeals has held that a retaining lien is enforceable against clients as well as third parties. *Id.* at 801. In *Jernryd,* Judge Moran suggested that the *Browy* rule was not an absolute. 117 F.R.D. at 417. Rather, courts balance the rights of an attorney against policies favoring unencumbered discovery and equitable administration of justice. Although this court notes that *Browy* cited to *Beardsley v. Cockerell,* 240 F.Supp. 845, 848 (D.D.C.1965) which held that the lien is enforceable as to third parties without qualification, this court favors the balancing rule articulated in *Jernryd.*

Applying the balancing analysis to the instant facts, the movant has not persuaded the court that the documents are central to his claim or that the administration of justice requires production. The principal underly-

ing the retaining lien seeks to provide an attorney leverage over a client. *Jernryd,* 117 F.R.D. at 418; *Tri–Ex,* 583 F.Supp. at 1118. Although Anthony is not seeking to enforce the subpoena as a client, the reality is that the parties here are so closely braided that production to Anthony (a shareholder in the client corporation and adversary to Bitler) would be production to Bitler. MBC's leverage would be totally lost.

In *Jernryd,* the court allowed limited production primarily because it would not disturb the attorney's leverage against his third party client. Similarly in *Tri–Ex,* the court allowed production to the adversary in spite of the lien because, "Where the adversary has access to documents to which the client does not, the inconvenience to the client is increased, thereby enhancing the value of the lien." 583 F.Supp. at 1117–18. Both courts focused on how production influenced leverage—how production might alter the lien's value. As applied here, production would destroy leverage. MBC expressed that production would damage its lien. If production would assist MBC in obtaining their fees, MBC certainly would have acquiesced to the subpoena. The court finds that MBC would lose its leverage if it were forced to produce the subpoenaed documents.

Lastly, Anthony suggests that a narrowly drawn protective order would protect MBC's lien and leverage against its client. The court responds that if Anthony is able to procure an agreed protective order, the court may modify its ruling. Similarly, if Anthony were to provide security for the documentation, the court may enforce a new subpoena.

IT IS SO ORDERED.