IN RE: the ALESSI FAMILY
LIMITED PARTNERSHIP,
Debtor,

The Alessi Family Limited
Partnership, Plaintiff,

v.

Centurion Development, LLC,
et al., Defendants.

CASE NO. 17–61379–CIV–
COOKE/GOODMAN

United States District Court,
S.D. Florida,
Miami Division.

Signed 07/19/2017

Brian Scott Behar, Behar, Gutt & Glazer, P.A., Fort Lauderdale, FL, Paul K. Silverberg, Silvergerg & Weiss, P.A., Weston, FL, for Plaintiff.

Paul K. Silverberg, Silvergerg & Weiss, P.A., Weston, FL, Patrick S. Scott, GrayRobinson PA, Fort Lauderdale, FL, Robert A. Stok, Stok Folk + Kon, P.A., Aventura, FL, for Defendants.

## ORDER ON EMERGENCY MOTION TO STAY PENDING APPEAL

Jonathan Goodman, UNITED STATES MAGISTRATE JUDGE

In this appeal from bankruptcy court, Appellant Stok Folk + Kon, P.A. moves, on an emergency basis, to stay a bankruptcy court order pending appeal. [ECF No. 1]. United States District Judge Marcia G. Cooke referred the motion to the Undersigned. [ECF No. 6]. The Undersigned entered a preliminary stay until July 19, 2017, to give the parties a chance to fully brief the issues. [ECF No. 7]. Appellees The Alessi Family Limited Partnership and Fusion Homes, LLC filed opposition responses to the motion to stay. [ECF Nos. 8; 11]. Stok filed a reply. [ECF No. 13].

For the reasons stated below, the Undersigned **grants** the emergency motion and **stays** the bankruptcy court order on appeal pending resolution of the appeal.

## I. Background

After Alessi allegedly defaulted on certain mortgages encumbering two of its properties, Fusion, the mortgagee, sued in state court to foreclose. Alessi then filed for bankruptcy under Chapter 11 of the Bankruptcy Code. Stok represented Fusion in the state court action and the bankruptcy proceedings.

On Fusion's behalf, Stok filed a proof of claim with the bankruptcy court. Alessi filed an adversary proceeding contesting, among other things, the validity of the proof of claim. Alessi also alleged that Fusion, through its prior counsel Stok, frustrated the sale of Alessi's properties to a third-party buyer by imposing unreasonable conditions before Fusion would satisfy the mortgages.

Partway through the bankruptcy proceeding, a different firm substituted in as counsel for Fusion. The parties hotly contest why Stok stopped representing Fusion. Stok contends that it told Fusion to seek separate counsel in the bankruptcy case because of alleged personal animosity between attorney Robert Stok and the bankruptcy court judge. Fusion and Alessi, meanwhile, maintain that Fusion terminated Stok for cause because of Stok's professional misconduct.

In the adversary proceeding, Alessi served Fusion with a request for production of documents. Fusion responded that several relevant documents are in Stok's possession. Fusion then served a subpoena on Stok, asking the firm to turn over to Fusion documents responsive to Alessi's document request.

Stok took the position that its retainer agreement with Fusion grants it a retaining lien on Fusion's documents until Fusion pays the attorney's fees it owes Stok. (Fusion allegedly owes Stok approximately $111,000 in fees.) Stok filed a motion to quash the subpoena and for a protective order, based mainly on its retaining lien. In those moving papers, Stok stated that it would turn over documents if Fusion posted adequate substitute security.

In its opposition response, Fusion argued that the subpoena is crucial because some of the information Alessi requested—and later threaten to compel Fusion to produce—could come only from Stok, such as how Stok calculated Fusion's proof of claim. Fusion also argued that Stok did not have a retaining lien at all because Stok's withdrawal stemmed from professional misconduct, which is an exception to a retaining lien. And even if a retaining lien did exist, Fusion continued, Federal Rule of Civil Procedure 45 does not include retaining liens as a basis for quashing subpoenas.

The bankruptcy court held a hearing on Stok's motion to quash and for a protective order. The bankruptcy court agreed with Fusion's rule-based argument, announcing on the record that Rule 45, which applies in bankruptcy per Bankruptcy Rule 9016, did not enumerate a retaining lien as a potential defense to a subpoena. The bankruptcy court also found that the information Fusion requested was necessary for Alessi to know.

The bankruptcy court then addressed the charges of misconduct against Stok. The bankruptcy court stated that "[t]here are sufficient allegations in this file of misconduct." [ECF No. 4, p. 91]. The bankruptcy court then said that it had "perceived from the early stages of this case"

that Stok had deliberately impeded and delayed the administration of the bankruptcy, and the court would no longer allow that impediment or delay to continue. [ECF No. 4, pp. 91–92]. The bankruptcy court, however, also clarified that it was "not making any determination that there has been misconduct." [ECF No. 4, p. 91].

The bankruptcy court issued a written order denying the motion to quash and for a protective order based on the oral rulings from the hearing. The order required Stok to produce documents responsive to the subpoena within seven days. The bankruptcy court did not require Fusion to post any security before receiving the documents.

Stok appealed the order to the District Court and moved, on an emergency basis in the bankruptcy court, to stay the order pending appeal. The bankruptcy court denied the stay motion for several reasons. First, the bankruptcy court found that Stok had little likelihood of prevailing on appeal because "Stok's financial interests are, in theory, protected by the funds currently held in escrow at the Broward County Circuit Court." [ECF No. 4, p. 118]. The bankruptcy court also set forth as an additional reason: it had a "strong initial impression that Stok's representation of Fusion was terminated for cause[.]" [ECF No. 4, p. 118]. The bankruptcy court also repeated its conclusion that Rule 45 does not have a retaining-lien defense or exception. [ECF No. 4, p. 118].

Second, the bankruptcy court concluded that Stok's withholding of documents was more harmful to Fusion and Alessi than disclosure would be to Stok because the requesting parties needed the documents to determine how Stok calculated Fusion's proof of claim. [ECF No. 4, p. 119]. Absent that information, the bankruptcy court stated, Fusion and Alessi could not meaningfully move forward in the adversary or main bankruptcy cases. [ECF No. 4, p. 119].

Third, the bankruptcy court found that "the public's interests are not served by lawyers who delay cases and make them more difficult to adjudicate." [ECF No. 4, p. 119]. Rather, according to the bankruptcy court, the public's interest would be best served by resolving the bankruptcy promptly. [ECF No. 4, p. 119]. The bankruptcy court did not, however, make a specific finding that Stok had, in fact, delayed the case or made the case problematic.

## II. Standard

Ordinarily, a party seeking to stay a bankruptcy court order pending appeal to the District Court must first ask the bankruptcy court for that relief. Fed. R. Bankr. P. 8007(a)(1)(A). The party can also ask the District Court for a stay, and the motion must, among other things, " 'show that moving first in the bankruptcy court would be impracticable,' or 'if a motion was made in the bankruptcy court, either state that the court has not yet ruled on the motion, or state that the court has ruled and set out any reasons given for the ruling.' " *Rosebrough v. Regions Bank, NA*, No. 15-CV-80391, 2015 WL 12860291, at *1 (S.D. Fla. July 21, 2015) (quoting Fed. R. Bankr. P. 8007(b)).

The grant of an emergency motion to stay pending appeal is appropriate when four factors are met: (1) the movant is likely to prevail on the merits on appeal; (2) movant will suffer irreparable damage absent a stay; (3) the nonmovant will suffer no substantial harm from the issuance of the stay; and (4) a stay will serve the

public interest. *Garcia–Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986); *In re Gonzalez*, 12–MC–60047–KMM, 2012 WL 12895515, at *1 (S.D. Fla. Jan. 23, 2012).

## III. Analysis

### A. *Likelihood of Success on the Merits*

▮ Florida law governs retaining liens. *In re Beverly Mfg. Corp.*, 841 F.2d 365, 368 (11th Cir. 1988). Florida law also governs "[t]he validity and extent of retaining liens in bankruptcy[.]" *In re Alfaro*, No. 2011-35116-BKC-AJC, 2012 WL 1255215, at *1 (Bankr. S.D. Fla. Apr. 13, 2012). Indeed, "[t]he Bankruptcy Code preserves valid state law liens to the extent they are consistent with the Code." *In re Herrera*, 390 B.R. 746, 749 (Bankr. S.D. Fla. 2008) (ordering turnover of financial documents to the bankruptcy trustee under Bankruptcy Code provision requiring same, but not before finding that attorney in possession of documents under a retaining lien was "entitled to an administrative expense in consideration for turning over the documents subject of his lien.").

▮ The Florida Supreme Court has established that an attorney "has a right to a retaining lien upon all of the client's property in the attorney's possession, including money collected for the client." *Daniel Mones, P.A. v. Smith*, 486 So.2d 559, 561 (Fla. 1986). The retaining lien is a tool available for attorneys to secure payment of fees by attaching a lien to "papers, money, securities and other property coming into his possession in the course of his professional employment[.]" *Wintter v. Fabber*, 618 So.2d 375, 376 (Fla. 4th DCA 1993). A retaining lien has value through the "leverage which it gives the attorney over a client who fails or refuses to pay for services rendered, through the embarrassment and inconvenience caused the client by withholding papers, documents, and other valuables[.]" *Id.*

▮ Absent adequate security, "[t]he lien may not be impaired by the client securing the right to inspect and copy the papers or compelling their production by subpoena." *Andrew Hall & Associates v. Ghanem*, 679 So.2d 60, 62 (Fla. 4th DCA 1996); *see Conde & Cohen, P.L. v. Grandview Palace Condo. Ass'n, Inc.*, 201 So.3d 64, 65 (Fla. 3d DCA 2015) (quashing order allowing former client to inspect law firm's files without adequate security because there was no determination that retaining lien was invalid); *Rutherford, Mulhall & Wargo, P.A. v. Antidormi*, 695 So.2d 1300, 1301 (Fla. 4th DCA 1997) (quashing order for law firm to release its file to former client before determining whether the fee was due or paid); *Smith v. Patton*, 562 So.2d 859, 860 (Fla. 1st DCA 1990) (quashing order allowing former client and new counsel to review documents covered by a retaining lien unless the fee dispute was resolved or security posted).

▮ "Only in **rare cases** will the files be released without payment or the furnishing of adequate security," and those instances include "when the lawyer's misconduct caused his withdrawal or when the client has an urgent need for the file to defend a criminal prosecution and lacks the means to pay the fee or post a bond." *Foreman v. Behr*, 866 So.2d 705, 707 (Fla. 2d DCA 2003) (quashing order requiring law firm to turn over file in malpractice case where exceptions did not exist) (emphasis added); *see also Heims v. G.M.S. Marine Serv. Corp.*, 143 So.3d 1188 (Fla. 4th DCA 2014) (holding, "this is not one of the rare cases that warrant disclosure of

counsel's file without payment of counsel's fee or security.").

■ In this case, the Undersigned finds that Stok is likely to prevail on appeal by convincing the District Court that the bankruptcy court incorrectly disregarded Stok's retaining lien. The bankruptcy court compelled Stok to produce documents subject to the lien without receiving prior payment of its fees or adequate security from Fusion. The bankruptcy court could not do that absent certain "rare case" exceptions. *Foreman*, 866 So.2d at 707; *Heims*, 143 So.3d 1188.

Although the bankruptcy court had strong "impressions" that the misconduct exception applied, the court expressly declined to find one way or another whether misconduct actually occurred. [ECF No. 4, pp. 91–92, 118]. Moreover, there are no facts suggesting that Fusion is in urgent need of documents to defend a criminal prosecution or that it lacks the means to pay a fee or bond or other security. *Foreman*, 866 So.2d at 707. Therefore, without a finding that those exceptions applied, the bankruptcy court could not compel Stok to produce documents protected by a retaining lien without at least requiring adequate security. *See, e.g, Andrew Hall*, 679 So.2d at 62.

To be clear, the Undersigned is giving no opinion about any of the alleged misconduct. Furthermore, the Undersigned certainly sympathizes with the bankruptcy court's goal of efficiently shepherding its case and avoiding delay tactics from attor-

neys. But there is no exception to a retaining lien where the withholding of documents puts pressure on the former client—because "[t]he attorney's lien cannot be disregarded merely because the pressure it is supposed to exert becomes effective." *Wintter*, 618 So.2d at 377. If courts "were to hold the lien must give way because it hampers the clients' defense of their suit, [they] would emasculate the retaining lien as it applies to general balances owed attorneys." *Jenkins v. Weinshienk*, 670 F.2d 915, 920 (10th Cir. 1982). The bankruptcy court had to find that the retaining lien was otherwise unenforceable, such as a scenario involving a finding that the misconduct exception applied,[1] before compelling production of documents without adequate security. But the court did not make any such finding.

■ As to the issue of security, the bankruptcy court's determination that "Stok's financial interests are, in theory, protected by the funds currently held in escrow at the Broward County Circuit Court" [ECF No. 4, p. 118], is not sufficient. The fact that an attorney may have "other avenues of recourse" is not an exception to a retaining lien. *See Fox v. Widjaya*, 201 So.3d 26, 28 (Fla. 3d DCA 2013).

Furthermore, there are no findings explaining how the escrowed funds the bankruptcy court mentions constitute adequate security for the retaining lien. To the contrary, the bankruptcy court's own cautious language—the funds provide protection "in theory"—betrays the uncertain nature of

---

1. This may well be a case where the District Court sends the matter back to the bankruptcy court to hold an appropriate hearing on whether Stok withdrew or was fired because of misconduct, and thus, whether an exception to the retaining lien exists. "Be careful what you wish for" is a familiar proverb that warns of the possible unpleasant consequences of actually receiving what you desire. This well-used idiom may apply if the District Court requires the bankruptcy court to hold such a hearing.

this purported security.[2] And the bankruptcy court does not actually say that the escrowed funds *are* adequate security; just that they will protect "Stok's financial interests," without explaining what that entails.

 The Undersigned also disagrees that Rule 45 does not permit a federal court to quash a subpoena, or issue a protective order under Rule 26, to protect a valid retaining lien. Persuasive case law shows otherwise. *See Anthony v. Bitler*, 911 F.Supp. 341, 343 (N.D. Ill. 1996) (denying motion to enforce subpoena of documents under retaining lien without security); *Lucky–Goldstar Intern. (Am.), Inc. v. Int'l Mfg. Sales Co.*, Inc., 636 F.Supp. 1059, 1065 (N.D. Ill. 1986) (denying motion to quash subpoena of documents under retaining lien but only under the condition that security be posted). The Undersigned is unpersuaded by the reading of Rule 45 employed in *Allstar Elecs., Inc. v. Honeywell Int'l, Inc.*, specifically, that "Rule 45 does not contain language that supports the quashing of a federal subpoena on the basis of a retaining lien." No. 8:10-CV-1516-T-30TGW, 2011 WL 4908853, at *2 (M.D. Fla. Oct. 13, 2011). If that interpretation of Rule 45 is taken to its logical conclusion, it would seemingly eviscerate all retaining liens (or indeed, any other contractual or common law lien not included in the text of Rule 45) if an attorney is served with a subpoena.

In sum, the Undersigned finds that Stok is likely to prevail on the merits of the narrow issue on appeal.

## B. Irreparable Harm

Due to a retaining lien's possessory nature, an attorney that loses his or her retaining lien absent substitute security is irreparably harmed. *Fox*, 201 So.3d at 29; *Rutherford*, 695 So.2d at 1301. Having found that the bankruptcy court compelled Stok to produce documents under a retaining lien without security of any kind, the Undersigned also concludes that Stok will suffer irreparable damage absent a stay of that order.

## C. No Substantial Harm to the Nonmovant

 Under this factor, the bankruptcy court concluded that Stok's withholding of documents was more harmful to Fusion and Alessi than disclosure would be to Stok, because absent disclosure, Fusion and Alessi could not meaningfully proceed in the adversary or main bankruptcy proceedings. [ECF No. 4, p. 119]. But again, "[t]he attorney's lien cannot be disregarded merely because the pressure it is supposed to exert becomes effective." *Wintter*, 618 So.2d at 377. Nor because "it hampers the clients' defense of their suit[.]" *Jenkins*, 670 F.2d at 920.

Moreover, there is no explanation on the record as to *how* these relevant documents (whatever they may be) precisely hamper the bankruptcy court's proceedings. Rather, that conclusion seems to also stem from the bankruptcy court's "impressions" that Stok engaged in delay tactics; the bankruptcy court, however, expressly declined to make that finding. [ECF No. 4, pp. 91–92, 118]. While a later hearing after appeal may vindicate the bankruptcy court's impressions, the record **as it stands now** shows only that Fusion and Alessi may suffer some unspecified delay in their case

---

**2.** Indeed, one of the substantive issues before the bankruptcy court is whether those escrowed funds are part of the debtor's (Alessi's) bankruptcy estate. [ECF No. 4, pp. 3,

118]. Assuming that is the case, it is unclear how the same funds would constitute adequate security.

if there is a stay, rather than "substantial harm." *Garcia–Mir*, 781 F.2d at 1453.

## D. Public Interest

The Undersigned agrees that the efficient resolution of bankruptcy claims and proceedings does serve the public interest. The Undersigned also recognizes that, in general, if "the public interest would be adversely affected by the [retaining] lien, the lawyer should be hesitant to invoke it." *Lucky–Goldstar*, 636 F.Supp. at 1064. But the Undersigned finds that Florida's treatment of retaining liens—upholding them unless certain exceptions apply—strikes the right balance between Stok's pecuniary interest and the public's interest in the administration of bankruptcy proceedings. Moreover, on balance, given the conclusions as to the first three factors, the Undersigned finds that a stay is warranted in this case. *See Garcia–Mir*, 781 F.2d at 1453

**DONE AND ORDERED** in Chambers, at Miami, Florida, on July 19, 2017.