*In re* LIQUIDATION OF MILE SQUARE HEALTH PLAN OF ILLINOIS
(John E. Washburn, as Director of Insurance and as Liquidator of Mile
Square Health Plan of Illinois, Plaintiff-Appellant, v. Scott A. Weiss *et al.*,
Defendants-Appellees).

First District (5th Division)   No. 1—89—1585

Opinion filed August 16, 1991.

Garry L. Smith and Cathleen M. Travis, both of Chicago, for appellant.

Matthew A. Flamm and Scott A. Weiss, both of Orlikoff & Flamm, of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, John Washburn, as liquidator of Mile Square Health Plan of Illinois, petitioned the circuit court for a rule to show cause against defendants, Scott Weiss, an attorney, and the law firm of Orlikoff and Flamm, for defendants' failure to turn over to the liquidator files relating to their representation of Mile Square Health Plan. The trial court denied plaintiff's petition on the ground that the defendants had a valid common law retaining lien on the documents in their possession, and ordered defendants to release the documents when the plaintiff had provided substitute adequate security for the lien. Subsequently, plaintiff's petition for reconsideration was denied. He appeals those denials, contending that (1) the defendant attorneys are improperly asserting their common law retaining lien; (2) the defendants do not have a secured claim against the insurance estate's general assets; and (3) under the provisions of the insurance liquidation statutes, the trial judge erred in ordering the transfer of substitute adequate security to the law firm. For the reasons set forth below, we affirm.

FACTS

In June 1988, A-Rock Printing, Ltd. (A-Rock), sued Mile Square Health Plan of Illinois (Mile Square) for failure to pay for certain printing services. A-Rock obtained a default judgment on November 15, 1988, in the amount of $15,559.99. On November 21, 1988, a non-wage garnishment summons was issued against Mile Square's bank account.

In early December 1988, Mile Square retained the defendants, Scott Weiss and the law firm of Orlikoff and Flamm to represent it in the A-Rock matter. Defendants filed a motion to vacate the default judgment. All execution proceedings against the garnishment fund were stayed, and the hearing was continued to January 31, 1989.

In the meantime, on January 25, 1989, the circuit court of Cook County entered a final order of liquidation with a finding of insolvency against Mile Square. As a health maintenance organization ex-

isting under Illinois law, Mile Square was placed in liquidation under the terms of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 799 *et seq.*). Plaintiff, John Washburn, as Director of Insurance for the State of Illinois, was appointed liquidator of the estate. The liquidation order directed the liquidator to "immediately take possession of the property, business and affairs" of Mile Square. The order also enjoined all persons having notice of the order from "bringing or further prosecuting any action or claim *** against the Company, *** or from obtaining preferences, judgments or other like liens, or the making of any levy against Mile Square of its property and assets, or from in any way interfering with the Director in his possession or control of or in his right, title and interest to the property, books, records and all other assets of Mile Square."

A copy of the liquidation order was delivered to defendants on January 30, 1989. At the January 31, 1989, hearing on the A-Rock garnishment matter, the trial judge granted the liquidator's request for a stay of proceedings. By letter dated February 6, 1989, the liquidator informed defendants that their legal services on behalf of Mile Square were no longer required, and requested that they submit to him an itemized bill for services rendered to date. Defendants submitted their bill showing a balance due of $2,365.50. The liquidator accepted the claim of defendant attorneys, but only as general creditors.

The liquidator also demanded that the defendant attorneys turn over to him all documents in the A-Rock case file. Defendants refused to turn over possession or to allow the liquidator access to the documents in defendants' possession, asserting their rights under their common law attorney's retaining lien, unless the liquidator would substitute other security in lieu of their retention of the documents.

On March 20, 1989, the liquidator brought a petition for a rule to show cause against defendants for their failure to turn over or allow access to the A-Rock file pursuant to the terms of the liquidation order. The liquidator's petition was denied, and the court entered an order stating that defendants had a valid common law retaining lien on all documents in their possession arising out of their services in the A-Rock matter. The order further provided for the defendants to release the file when the liquidator had provided them with substitute adequate security for the lien. No hearing was held to establish the value of defendants' services or the value of the documents in defendants' possession or to establish the amount of substitute security required. The liquidator's subsequent petition for reconsideration was denied, and he brings this interlocutory appeal pursuant to Illinois Supreme Court Rule 307 (134 Ill. 2d R. 307).

OPINION

The liquidator's first contention is that defendants improperly asserted the common law retaining lien. Although acknowledging that an attorney may have a retaining lien upon a client's documents when there is a fee dispute or where the client otherwise refuses to pay, he argues that there is no reason to invoke it here since the liquidator has conceded defendants' status as a general creditor of the estate and agreed to accept and recommend approval of their claim in the liquidation proceedings. We agree, however, with the trial court's finding that defendants do have a right to invoke the lien so long as the debt remains unpaid, even where the indebtedness is acknowledged, and particularly where, as here, there may be insufficient assets from which to satisfy the claims of the general creditors in their entirety.

■■ Illinois common law has long recognized the retaining lien as a possessory lien in favor of an attorney for his fees. (*Sanders v. Seelye* (1889), 128 Ill. 631, 21 N.E. 601.) " 'This retaining lien exists on all papers or documents of the client placed in the attorney's hands in his professional character or in the course of his employment.' *** '[It is] the attorney's right to retain possession of property belonging to his client which comes into his hands *** until his charges are paid.' " (*Jovan v. Starr* (1967), 87 Ill. App. 2d 350, 354-55, 231 N.E.2d 637, 639, quoting *Sanders*, 128 Ill. at 637-38, 21 N.E. at 603, and *Needham v. Voliva* (1915), 191 Ill. App. 256, 258.) As a possessory lien, its existence is dependent upon the attorney's continued possession of the client's property and is lost if the attorney surrenders possession of the documents. (*Upgrade Corp. v. Michigan Carton Co.* (1980), 87 Ill. App. 3d 662, 665, 410 N.E.2d 159, 161 (lien continues until attorney surrenders the property with or without payment). Contra *In re Receivership of Syndicate Two* (Fla. App. 1989), 538 So. 2d 945 (under Florida law, order directing transfer of documents has no effect on the lien).) Until he receives payment in full, or the client posts adequate security for payment, assertion of the lien through continued possession of the documents is proper. *Upgrade*, 87 Ill. App. 3d 662, 410 N.E.2d 159.

■ The retaining lien may be characterized as a passive lien, in that it cannot be actively enforced by the attorney in a judicial proceeding. (*Armstrong v. Zounis* (1940), 304 Ill. App. 537, 26 N.E.2d 670.) Its passive nature distinguishes it from the statutory charging lien which may attach to proceeds recovered by an attorney on behalf of his client which may be actively enforced (Ill. Rev. Stat. 1987, ch. 13, par. 14), and also from a security interest subject to Article 9 of

the Uniform Commercial Code, pursuant to which a creditor may foreclose against the underlying collateral. (Ill. Rev. Stat. 1987, ch. 26, par. 9—101 *et seq.*) The value of the retaining lien to the attorney is in the leverage it gives him over the client who fails to pay for services rendered, and arises from the inconvenience to the client caused by the withholding of his property. See generally Annot., 3 A.L.R.2d 148 (1949).

■ Under the liquidator's argument that a retaining lien lapses when the debtor acknowledges the debt and the amount owed, a nonpaying client would need only concede the debt, and the attorney would no longer be able to assert his lien. This result, however, would ignore the ultimate purpose of the lien, which is to provide the attorney with leverage to collect his fees. It is apparent that more than the acknowledgement and fixing of a debt is necessary to extinguish a retaining lien. The debt must also be satisfied or adequately secured.

The case of *Upgrade Corp. v. Michigan Carton Co.* (1980), 87 Ill. App. 3d 662, 410 N.E.2d 159, illustrates this point. There the attorney invoked a retaining lien in defense to an action by his former clients to compel him to turn over files on their pending lawsuit. The trial court granted the former clients' petition, and ordered that the attorney turn over the files and that he be given a statutory lien on the proceeds of the pending litigation in place of the retaining lien. The appellate court, however, found that the statutory lien provided inadequate security to the attorney since it would attach only if a recovery were in fact achieved. The court, therefore, affirmed that portion of the trial court's order which required the attorney to turn over the file, but it delayed the effect of that order until the value of the attorney's services was determined and until the attorney was compensated or given a guaranty satisfactory to the attorney that he will be compensated. (*Upgrade*, 87 Ill. App. 3d at 666, 410 N.E.2d at 162.) If, as the liquidator urges, the acknowledgement of the debt and the determination of the amount due were sufficient to extinguish the lien, there would have been no basis for the court to require that payment or security be provided once the amount due the attorney had been ascertained.

The liquidator cites *Kallen v. Litas* (N.D. Ill. 1985), 47 Bankr. 977, in support of his position. The issue in that case was whether the attorneys' retention of funds from a settlement they negotiated for their clients constituted an avoidable preferential transfer under the Bankruptcy Code (11 U.S.C. §101 *et seq.* (1988)). In opposition to the trustee's efforts to recover those funds, the attorneys argued, *inter alia*, that they had a retaining lien on the funds perfected by their

possession of the funds, and that such a lien met the prerequisites of section 547(c)(3) of the Bankruptcy Code exempting purchase money security interests from avoidance by the trustee. (11 U.S.C. §547(c)(3) (1988).) The court analyzed the prerequisites of section 547(c)(3) for finding an exempt purchase money security interest, and determined on several grounds that neither the statutory attorney's lien nor the common law retaining lien met any of those prerequisites. (*Kallen*, 47 Bankr. at 984-85.) Only in a footnote did the court further observe that "[e]ven assuming the firm possessed such a [common law retaining] lien, that lien lapsed and became inoperative when the firm's charges were liquidated." (*Kallen*, 47 Bankr. at 985 n.14.) It is from this *dictum* that the liquidator urges that once the amount of the debt was ascertained, *i.e.*, "liquidated," any lien which defendants may have had lapsed. We disagree with the liquidator's contention. It is apparent that "liquidated" as used in *Kallen* means more than the mere acknowledgement and ascertainment of a debt. In *Kallen* the attorney's retention of the funds was more than the assertion of a passive lien on the client's property. The attorney was in effect reimbursing himself for fees due, thus attempting to satisfy his claim from the funds and thereby invoking the question whether such attempted satisfaction constituted an avoidable preferential transfer.

This conclusion finds further support in the fact that the footnote in *Kallen*, upon which the liquidator bases his argument, relies on *Upgrade*. As discussed above, *Upgrade* supports our position here that the lien does not lapse until the debt has been satisfied or otherwise sufficiently secured. Just as the statutory lien in *Upgrade* was deemed to be inadequate security since it would attach only if proceeds were in fact recovered, so here the liquidator's recognition of defendants as general creditors is inadequate since as general creditors they will be paid only if sufficient assets exist after secured creditors are satisfied.

Although under certain circumstances an attorney may be prohibited from asserting an otherwise viable possessory lien, this is not such a case. There is ample precedent which holds that, notwithstanding the insolvency of the client, the lien may be asserted without breach of the attorney's ethical duties. "Mere existence of a legal right does not entitle a lawyer to stand on that right if ethical considerations require that he forego it." (ABA Standing Committee on Ethics and Professional Responsibility, Informal Opinion 1461 (Nov. 11, 1980) (hereinafter Informal Op. 1461). See Rule 1.16(d) of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 1.16(d)).) The ABA opinion goes on to provide that in determining whether to assert a lien, the attorney should

"evaluate his or her interests against interests of the client and of others who would be substantially and adversely affected by assertion of the lien. The lawyer should take into account [1] the financial situation of the client, [2] the sophistication of the client in dealing with lawyers, [3] whether the fee is reasonable, [4] whether the client clearly understood and agreed to pay the amount now owing, [5] whether imposition of the retaining lien would prejudice important rights or interests of the client or of other parties, [6] whether failure to impose the lien would result in fraud or gross imposition by the client, and [7] whether there are less stringent means by which the matter can be resolved or by which the amount owing can be secured." (Informal Op. 1461.)

For example, if the exercise of the lien would prejudice the client's ability to defend against a criminal charge or to otherwise protect a significant personal liberty, the attorney should forego assertion of the lien. (*Hauptmann v. Fawcett* (1935), 243 A.D. 613, 276 N.Y.S. 523.) Also, if the attorney's assertion of the lien would adversely affect the court, other parties or the public interest, the lawyer should hesitate to invoke it. (See, *e.g., Jernryd v. Nilsson* (N.D. Ill. 1987), 117 F.R.D. 416 (unethical to invoke lien where interests of free discovery outweighed the attorney's interest, especially in light of the fact that continued retention of the documents by the attorney would exert little or no leverage on the former client to encourage him to pay).) Similarly, if the client is financially unable to pay, the lawyer should forego his lien since failure to pay the fee is not deliberate in that instance and therefore does not amount to gross imposition by the client. *Lucky-Goldstar International (America), Inc. v. International Manufacturing Sales Co.* (N.D. Ill. 1986), 636 F. Supp. 1059. See generally Annot., 69 A.L.R.4th 975 (1989).

■ It is clear, however, that where the property of the client is in the possession of a trustee or liquidator, to be distributed ratably among the client's creditors, as in a bankruptcy or liquidation proceeding, the assertion of the retaining lien in competition with other creditors is not prohibited. (*In re San Juan Gold, Inc.* (2d Cir. 1938), 96 F.2d 60, 60 ("An attorney has a lien for fees upon papers of his client which come into his possession in the course of his professional employment, and such lien is not invalidated by the bankruptcy of the client"); *Brauer v. Hotel Associates, Inc.* (1963), 40 N.J. 415, 421, 192 A.2d 831, 834 ("it has been firmly established that a trustee in bankruptcy takes only such title as the bankrupt has, subject to all liens and equities existing upon or against the property, including an attor-

neys' [*sic*] retaining lien for services rendered *prior* to the bankruptcy proceedings" (emphasis in original)). Accord *In re Browy* (7th Cir. 1976), 527 F.2d 799.) When the client is in a bankruptcy or a liquidation proceeding, there may be assets to satisfy some claims but not others. In such circumstances, courts have not hesitated to permit the attorney to assert a retaining lien to leverage a claim for fees into a priority position. The question of whether there in fact will be sufficient assets to satisfy the attorney's claim does not affect the attorney's right to assert the lien. *San Juan Gold*, 96 F.2d at 60.

Although *Browy*, *Brauer*, and *San Juan Gold* involved bankruptcy and not insurance insolvency, the same concerns are involved. In both situations, there may be assets to satisfy some claims, and the attorney is using the lien as leverage to improve his priority, thereby increasing the chances of collecting fees due. Both the trustee of a bankrupt's estate and the liquidator of an insolvent insurer have a need to gain access to the documents subject to the lien in order to administer the insolvents' estates. In the bankruptcy cases, the trustee's need for access to the documents was balanced against the attorney's interest in payment of fees due, and orders for production of the documents were conditioned upon the trustee's preservation of the priority afforded by the liens. The trial court here conditioned its order that the defendants turn over the documents on the liquidator's provision of substitute adequate security in place of the retaining lien. We find no abuse of discretion in such an order.

■ Other arguments raised by the liquidator concern the secured or unsecured nature of the defendants' claim, and the value of the collateral, the documents. However, the eventual characterization and resolution of defendants' claim under the insurance liquidation statute is not before this court. While the possessory lien itself does not make the defendants' claim a secured one, assertion of the lien nonetheless provides leverage to the defendants through which they may negotiate a priority position for the fees which are owed to them. The amount of that leverage, and thus the effectiveness of the lien, depends on the subjective worth of the documents to the liquidator. (See *Brauer v. Hotel Associates, Inc.* (1963), 40 N.J. 415, 422, 192 A.2d 831, 835 (where the court stated "It is not the value of the property itself which measures the effectiveness of the lien. Rather, the effectiveness of the lien is proportionate to the inconvenience of the client in being denied access to his property. [Citations.] The focal point is not upon the objective worth of the property, but upon its subjective worth to the client and those who represent him").) Under the trial court's order, the liquidator is not required to pay defendants' claim

for fees. Rather, he is simply directed to provide adequate security to defendants before they will be ordered to surrender the documents. If the liquidator chooses to forego the documents, he is not required by the order to enhance the defendants' position as creditors. If the liquidator determines that access to the documents is necessary, the trial court acted well within the latitude of its discretion in requiring the defendants to turn over the documents only upon receipt of adequate substitute security.

Accordingly, for all the reasons above, we affirm.

Affirmed.

LORENZ, P.J., and McNULTY, J., concur.