TWIN SEWER AND WATER, INC., *et al.*, Plaintiffs, v. MIDWEST BANK AND TRUST COMPANY *et al.*, Defendants.—DAVIDSON GOLDSTEIN MANDELL AND MENKES, Petitioner-Appellee v. TWIN SEWER AND WATER, INC., *et al.*, Respondents-Appellants.

First District (6th Division)    Nos. 1—98—2407, 1—99—0695 cons.

Opinion filed October 29, 1999.

Donald F. Spak, of Hamblet, Casey, Oremus & Vacin, of Chicago, for appellants.

Bruce Menkes and Catherine A. Van Horn, both of Davidson Goldstein Mandell & Menkes, of Chicago, for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Davidson Goldstein Mandell & Menkes (Davidson Goldstein) served as legal counsel to plaintiffs, Twin Sewer & Water, Incorporated, and Mario and Marilyn DeBartolo, in these consolidated cases. On March 5, 1998, Davidson Goldstein filed a motion to withdraw as plaintiffs' counsel. After the circuit court granted leave to withdraw, Davidson Goldstein asserted a retaining lien over plaintiffs' documents to insure payment of allegedly outstanding legal fees. On March 30, 1998, Davidson Goldstein filed a petition for a summary proceeding alleging the existence of both statutory and common-law liens. On May 18, 1998, the circuit court entered an order requiring plaintiffs to deposit $40,000 with the clerk of the circuit court of Cook County as security for attorney fees owed to Davidson Goldstein. Plaintiffs then filed this interlocutory appeal pursuant to Supreme Court Rule 307(a) (166 Ill. 2d R. 307(a)) and maintain the following: (1) the circuit court did not have subject matter jurisdiction to consider Davidson Goldstein's petition for adjudication of the retaining lien; (2) Davidson Goldstein waived its retaining lien by representing to the trial court that it would turn over its case files to Twin Sewer's new attorneys; and (3) the trial court erred in adjudicating Davidson Goldstein's claim for attorney fees over Twin Sewer's objection and in the absence of pleadings or a hearing. For the reasons set forth below, we reverse the judgment of the circuit court.

## FACTS

Davidson Goldstein represented plaintiffs in three consolidated chancery lawsuits currently pending in the circuit court of Cook County. On March 5, 1998, Davidson Goldstein filed a motion seeking leave to withdraw its appearance on behalf of plaintiffs. On March 10, 1998, at the hearing on the motion to withdraw, defendant Sherri Clementi's (Clementi) counsel objected to the withdrawal on the

ground that Davidson Goldstein had not yet complied with various discovery requests and orders. The trial court granted Davidson Goldstein leave to withdraw but conditioned withdrawal on compliance with prior document production requests by March 24, 1998.

On March 30, 1998, Davidson Goldstein filed a petition for a summary proceeding to adjudicate liens, which alleged the existence of both a statutory lien under the Attorneys Lien Act (the Act) (770 ILCS 5/0.01 *et seq.* (West 1992)) and a common law retaining lien. Specifically, the petition stated that Davidson Goldstein's withdrawal as counsel of record was effective as of March 24, 1998, and requested that the trial court adjudicate the firm's retaining lien so as to allow release of the case files. Clementi again objected to Davidson Goldstein's withdrawal and presented a motion for sanctions pursuant to Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)), arguing that the documents subject to the March 10 order had not yet been submitted for copying. As a result, on April 1, 1998, the trial court ordered Davidson Goldstein to submit the documents for copying at Clementi's expense, and that upon submission of the documents for copying, Davidson Goldstein could withdraw as plaintiffs' counsel. According to the record, Davidson Goldstein complied with this order on April 1, 1998. The court's order also gave plaintiffs' new counsel leave to appear by April 17, 1998.

On April 17, 1998, plaintiffs' current counsel filed his substitute appearance. Then, at a hearing on April 22, 1998, he stated on the record that he was appearing for plaintiffs. As part of the proceedings on April 22, 1998, plaintiffs raised objections to Davidson Goldstein's lien adjudication petition. They claimed that Davidson Goldstein waived its retaining lien by making an appointment allowing plaintiffs' new counsel to examine the retained files and also by filing a petition asserting the retaining lien. In addition, plaintiffs also argued that it would be inequitable to allow them to pursue the retaining lien. The court responded by stating:

> "[I]n fairness to the DeBartolos and to Twin Sewer & Water and in the overall interest of moving this case along without prejudice to your lien adjudication or ordering them to turn over to pay the law firm, I think that counsel should have that to file in order for him to proceed on the three cases."

Davidson Goldstein informed the court that plaintiffs owed approximately $50,000 in attorney fees. When the court asked Davidson Goldstein how much plaintiffs had already paid, it said it did not know. Plaintiffs' new counsel then questioned the amount set forth by Davidson Goldstein, but the court stated:

> "I think as a practical matter, I think that [Davidson Goldstein]

should prepare to turn over these files to the new attorney because, after all, they still need to have representation with regard to the merits of the case. And I don't want to get sidetracked into large delays on this case because of this question of fees."

The court ultimately entered an order on April 22, 1998, allowing Davidson Goldstein leave to respond to plaintiffs' objections to lien adjudication and arranged for Davidson Goldstein to provide plaintiffs' new counsel with a full set of its billing invoices in this litigation.

On May 18, 1998, another hearing was held. At the hearing, Davidson Goldstein informed the court that it had complied with all requested discovery. Plaintiffs' new counsel, however, pointed out that not all billing invoices had been provided. Even though Davidson Goldstein stated that plaintiffs owed at least $42,000 in unpaid attorney fees, plaintiffs' new counsel disputed this amount, arguing that not all of the billing invoices were produced and there were questions as to the propriety of some of the charges.

At the conclusion of the hearing, the court granted Davidson Goldstein's lien adjudication petition and stated:

"I'm ordering that [the plaintiffs] pay into the Clerk of the Circuit Court of Cook County the amount of 100% of the claimed amount owed. That would be $40,000 that the court has been told about here today. And this is without prejudice to an adjudication of the amount of this money.

But I think that under the Upgrade Corporation case *** I think that this would be one way to go about this."

The trial court then requested that Davidson Goldstein turn over the case files within three days of receipt of the notice of deposit, and the court set discovery and briefing schedules on the issue of fees. Twin Sewer filed a motion to strike the petition on May 18, 1998, and then filed a motion to reconsider the May 18 order on June 11, 1998. The court denied both motions on June 25, 1998, and this timely interlocutory appeal followed.

## ANALYSIS

### I

Plaintiffs first contend that the circuit court lacked subject matter jurisdiction over Davidson Goldstein's petition for adjudication of the retaining lien. They argue that the circuit court incorrectly interpreted *Upgrade Corp. v. Michigan Carton Co.*, 87 Ill. App. 3d 662, 410 N.E.2d 159 (1980). Davidson Goldstein, on the other hand, argues that the circuit court correctly interpreted *Upgrade* and had the inherent authority to adjudicate the retaining lien because the documents at issue were necessary to the pending underlying litigation.

■ An attorney who withdraws from a case for a justifiable cause or is terminated without cause may recover compensation for services rendered. See *Upgrade Corp.*, 87 Ill. App. 3d at 664, 410 N.E.2d at 160. The measure of the lawyer's recovery lies in *quantum meruit* for the services actually rendered. See 7A C.J.S. *Attorney & Client* §§ 290-91, at 540-45 (1980).

■ Two types of liens may be asserted to obtain payment of outstanding attorney fees. A charging or special lien attaches only to the proceeds recovered in the underlying litigation, while the retaining or general lien attaches to property belonging to the client which the attorney received during representation. *Upgrade*, 87 Ill. App. 3d at 664, 410 N.E.2d at 161, citing *Sanders v. Seelye*, 128 Ill. 631, 21 N.E. 601 (1889); see 7A C.J.S. *Attorney & Client* § 358, at 711-13 (1980). While the Act allows active enforcement as to "any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice" (770 ILCS 5/1 (West 1992)), the retaining lien has long been recognized under Illinois common law as a possessory lien in favor of an attorney for his fees (*Sanders*, 128 Ill. 631, 21 N.E. 601). Specifically, the retaining lien exists " 'on all papers or documents of the client placed in the attorney's hands in his professional character or in the course of his employment.' *** '[It is] the attorney's right to retain possession of property belonging to his client which comes into his hands *** until his charges are paid.' " *Jovan v. Starr*, 87 Ill. App. 2d 350, 354-55, 231 N.E.2d 637, 639 (1967), quoting *Sanders*, 128 Ill. at 637-38, 21 N.E. at 603, and *Needham v. Voliva*, 191 Ill. App. 256, 258 (1915), respectively. In other words, "the retaining lien is a method of holding the client's property hostage until fees are paid." S. Kanwit, *Attorneys' Liens: When Can You Retain a Client's Files?*, 79 Ill. B.J. 274, 274 (1991).

As a possessory lien, the retaining lien's existence is dependent upon the attorney's continued possession of the client's property and is only lost if the attorney surrenders possession of the documents. *In re Liquidation of Mile Square Health Plan*, 218 Ill. App. 3d 674, 677, 578 N.E.2d 1075, 1078 (1991) (superceded by statute on other grounds, see *In re Liquidation of Coronet Insurance Co.*, 298 Ill. App. 3d 411, 698 N.E.2d 598 (1998)), citing *Upgrade*, 87 Ill. App. 3d at 664, 410 N.E.2d at 161. Until the attorney receives payment in full or the client posts adequate security for payment, assertion of the lien through continued possession of the documents is proper. See *Upgrade*, 87 Ill. App. 3d at 664, 410 N.E.2d at 161. However, a common law retaining lien cannot be actively enforced by a judicial proceeding. *Upgrade*, 87 Ill. App. 3d at 664-65, 410 N.E.2d at 161, citing *Needham v. Voliva*,

191 Ill. App. 256, 258 (1915) (stating that "[t]he possessory lien is a right merely to retain, and cannot be actively enforced"); *Mile Square*, 218 Ill. App. 3d at 677, 578 N.E.2d at 1078; *Armstrong v. Zounis*, 304 Ill. App. 537, 26 N.E.2d 670 (1940). In this sense, the retaining lien "may be characterized as a passive lien." *Mile Square*, 218 Ill. App. 3d at 677, 578 N.E.2d at 1078.

The aforementioned principles of law are clear and well settled. However, at this point some disagreement arises. For this reason, this opinion now turns to a brief overview of the Illinois cases discussing enforcement of retaining liens.

In 1915, this court released the *Needham* opinion. *Needham*, 191 Ill. App. 256. In *Needham*, the appellant, Needham, filed a bill for the adjudication of an attorney's lien under the Act upon a note and trust deed of Voliva's that were in Needham's possession. The case was referred to a master, who dismissed the bill "for want of equity." *Needham*, 191 Ill. App. at 258. On appeal, Needham argued in part that a party may "resort to equity to adjudicate the validity of a common-law retaining lien." *Needham*, 191 Ill. App. at 258. This court disagreed, determined the bill should have been dismissed and declared that "equity has no jurisdiction to adjudicate a possessory or retaining lien. *** The possessory lien is a right merely to retain, and cannot be actively enforced. [Citations.]" *Needham*, 191 Ill. App. at 258.

This court returned to the issue of enforcement of the retaining lien in *Armstrong v. Zounis*, 304 Ill. App. 537, 26 N.E.2d 670 (1940). In *Armstrong*, the defendants appealed from a decree entered by the circuit court in a proceeding brought by the plaintiffs to foreclose an attorney's lien on real estate, where plaintiffs held the master's deeds and alleged unpaid attorney fees. The question before the court was "whether the attorney in a retaining case can enforce his rights as a retaining lienor where the lien exists in his favor upon the papers and documents that were placed in his possession by his client." *Armstrong*, 304 Ill. App. at 543, 26 N.E.2d at 673. The court reversed the circuit court's decree and remanded "with directions to dismiss the bill for want of equity." *Armstrong*, 304 Ill. App. at 547, 26 N.E.2d at 674. Specifically, the court quoted the following passage from Corpus Juris Secundum:

" 'Generally a retaining lien cannot be actively enforced, although, under circumstances noted hereunder, such lien may be enforced as an incident to a proceeding brought for another purpose.

*** More specifically a general or retaining lien cannot be enforced by judicial proceedings brought for that purpose ***. On the other hand where the attorney is brought into court, *upon ap-*

*plication of his client,* to compel the attorney to turn over money or papers upon which he claims a lien, or in a suit by the attorney to recover his compensation, the court may ascertain the extent of the lien and enforce it.' " (Emphasis added.) *Armstrong,* 304 Ill. App. at 543, 26 N.E.2d at 673, quoting 7 C.J.S. *Attorney & Client* § 233.

Next, in *Ross v. Wells,* 6 Ill. App. 2d 304, 127 N.E.2d 519 (1955), the plaintiff, an attorney, filed a complaint for attorney fees. Defendants, in an effort to take the discovery deposition of plaintiff, had a notary public issue a subpoena requesting plaintiff's attendance at the deposition and that he produce files and records relating to the legal services he provided for defendants. *Ross,* 6 Ill. App. 2d at 306, 127 N.E.2d at 520. Plaintiff appeared before the notary in response to the subpoena but refused to produce the requested records on the ground that he had an attorney's lien, which would be destroyed if he produced the records. *Ross,* 6 Ill. App. 2d at 306-07, 127 N.E.2d at 520. Plaintiff was ordered to produce the requested documents but he still refused. Defendants then filed a petition to show cause against plaintiff why he should not be found in contempt. The circuit court dismissed defendants' petition and an appeal followed.

The court reversed the dismissal of defendants' petition and remanded so that plaintiff could show cause as to why he was not in contempt. Relying on the specific facts of the case, the court stated:

"There is logic in the rule that a lawyer should be protected in his retaining lien until he is paid, and should not be compelled to produce and surrender the records and papers upon which he has such lien in any proceeding other than a suit by the attorney to recover his fees. We think there is a clear distinction when he sues for his fees." *Ross,* 6 Ill. App. 2d at 308, 127 N.E.2d at 520-21.

The court elaborated by reasoning that since the attorney filed the complaint and had the burden of proving the nature of the services rendered, he was under a duty to disclose the documents supporting his claim. *Ross,* 6 Ill. App. 2d at 308-09, 127 N.E.2d at 521. This obligation was determined to outweigh the significance of the retaining lien. *Ross,* 6 Ill. App. 2d at 309, 127 N.E.2d at 521.

In *Upgrade,* 87 Ill. App. 3d 662, 410 N.E.2d 159, this court revisited the issue of retaining liens. There, the appellant, an attorney, withdrew as one of plaintiffs' attorneys in an action for breach of trade secret agreements and obligations. The plaintiffs' remaining attorney then filed a petition seeking a court order requiring appellant to turn over all files concerning the pending litigation. Appellant claimed that he had a common law retaining lien and refused to release the files until he was paid for his services. The circuit court granted plaintiffs' petition but ordered that appellant be given a statutory lien

to be determined upon the outcome of the case. On appeal, the court addressed two issues: (1) whether it was error for the court to enter a production order denying appellant his retaining lien; and (2) whether the court erred in failing to hold an evidentiary hearing to determine the plaintiffs' indebtedness for legal services. This court first determined that the circuit court properly exercised its power to order appellant to turn over the files but held that "the statutory lien on the proceeds of the pending litigation was inadequate security since such a lien would only attach if proceeds were in fact recovered." *Upgrade*, 87 Ill. App. 3d at 666, 410 N.E.2d at 161-62. The court also found that the circuit court erred by not determining the value of appellant's services and explained that, *"[w]here the attorney is brought into court upon the petition of his client to compel the attorney to turn over money or paper upon which a retaining lien is claimed*, the court may ascertain the extent of the lien and enforce it." (Emphasis added.) *Upgrade*, 87 Ill. App. 3d at 666, 410 N.E.2d at 162.

Then, in *Intaglio Service Corp. v. J.L. Williams & Co.*, 112 Ill. App. 3d 824, 445 N.E.2d 1200 (1983), an attorney withdrew from litigation when he was not paid. His former client both refused to pay the fees and filed a petition for a summary proceeding to compel surrender of the files in the case in exchange for security. The attorney and his law firm filed a lawsuit seeking recovery for costs advanced and fees for legal services rendered. Relevant to the case *sub judice*, the court held in part that even though the attorney became subject to discovery when he filed his lawsuit for fees, he did not waive his right to his retaining lien. *Intaglio*, 112 Ill. App. 3d at 826, 445 N.E.2d at 1201. The court made clear that the *Ross* decision "merely held that when an attorney files a suit for fees and the client contests the amount of the fees, the client is entitled to discovery *in that action"* because the documents at issue "directly bear on the claim for fees." (Emphasis in original.) *Intaglio*, 112 Ill. App. 3d at 832, 445 N.E.2d at 1205. The opinion added that an "attorney has a right to his retaining lien until his fee is paid or proper and sufficient security is given." *Intaglio*, 112 Ill. App. 3d at 832, 445 N.E.2d at 1205, citing *Upgrade*, 87 Ill. App. 3d 662, 410 N.E.2d 159.

Our discussion now turns to the application of the preceding cases to the case at bar. For the reasons set forth below, we find that the circuit court did not have the subject matter jurisdiction necessary to adjudicate the retaining lien.

According to the record on appeal, Davidson Goldstein moved to withdraw as plaintiffs' counsel on March 5, 1998. Then, on March 30, 1998, Davidson Goldstein filed a document entitled "Petition for Summary Proceeding to Adjudicate Liens," which the circuit court granted

on May 18, 1998. Plaintiffs maintain that under *Upgrade*, when a party files a petition for a discovery order against its former attorney, the former attorney may then assert a retaining lien as a defensive measure. However, plaintiffs state that in this case they never asked the court for a discovery order after Davidson Goldstein withdrew from the case. Davidson Goldstein counters that plaintiffs' conclusion is incorrect because *Upgrade* actually held that the trial court had the inherent authority to release a lien upon payment of adequate security, "in the interest of equity and fairness."

As stated above, each case discussing retaining liens is highly fact specific and each case presents a slightly different factual scenario. But it is clear from the case law that former counsel does not possess the right to obtain outstanding attorney fees in the manner sought by Davidson Goldstein. See *Putnam v. Hogan*, 122 Ohio App. 3d 351, 354, 701 N.E.2d 774, 775 (1997) (stating that since a retaining lien is a passive lien, the attorney must wait until the client agrees to pay outstanding attorney fees in exchange for files "out of embarrassment or inconvenience"); see also *Anthony v. Bitler*, 911 F. Supp. 341, 342 (N.D. Ill. 1996), quoting Annotation, *Attorney's Retaining Lien as Affected by Action to Collect Legal Fees*, 45 A.L.R.4th 198, 199 (1986). In *Upgrade*, the court made clear that former counsel was "not seeking to enforce his retaining lien by judicial proceedings"; instead, he used "the existence of his retaining lien as a defense in proceedings initiated by his former clients to compel him to turn over his files." *Upgrade*, 87 Ill. App. 3d at 665, 410 N.E.2d at 161. This language, when read in conjunction with the several cases stating that a retaining lien cannot be actively enforced by a judicial proceeding (*Needham*, *Upgrade* and *Mile Square*), supports plaintiffs' argument.

Davidson Goldstein insists that in *Upgrade* the attorney withdrew his appearance, asserted a retaining lien over his former client's files, and then his former client filed a petition asking the court to order the attorney to turn over files. This statement, however, is an incorrect representation of the facts in *Upgrade*. In *Upgrade*, former counsel withdrew his appearance, the plaintiffs' remaining counsel petitioned the court to order the turnover of files and then former counsel asserted the retaining lien. See *Upgrade*, 87 Ill. App. 3d at 663-64, 410 N.E.2d at 160. In contrast, in the instant case, Davidson Goldstein has filed a petition to adjudicate the lien, but plaintiffs have yet to seek an order asking for production of the files subject to the lien.

Initially, this distinction may seem trivial, but upon closer examination, it is clear that since the common law retaining lien is constantly referred to as being a passive lien that may not be actively enforced in a judicial proceeding, the *Upgrade* court allowed former

counsel to assert his retaining lien *as a defense* to a petition for discovery filed by his former client. See also *Armstrong*, 304 Ill. App. at 543, 26 N.E.2d at 673 (stating that the exception to the court's inability to enforce a retaining lien occurs when the former attorney is brought into court upon application of the client, to compel the release of files). Had the court not allowed the attorney this defensive measure, his lien would have been rendered meaningless. But the court never stated that the attorney could accelerate this process by bringing a petition to adjudicate the lien before the former client actively sought the files in the attorney's possession.

Davidson Goldstein argues that, if the above is true, then it is unclear why the *Upgrade* court held that a trial court has the inherent authority to release a lien upon payment of security in the interest of equity and fairness. We find that this is an incorrect reading of *Upgrade*. The *Upgrade* opinion held that the trial court's grant of a statutory lien on the proceeds of the underlying litigation was inadequate security because it would only be effective if plaintiffs were successful in the litigation. *Upgrade*, 87 Ill. App. 3d at 666, 410 N.E.2d at 162. In the next paragraph, the court added that the trial court erred by "not determin[ing] the value of the appellant's services" and that when a former client petitions for materials subject to a retaining lien, "the court may ascertain the extent of the lien and enforce it." *Upgrade*, 87 Ill. App. 3d at 666, 410 N.E.2d at 162. Then, the following sentence stated that the "attorney who claims compensation for services rendered by him to the client is entitled to a summary determination fixing the value of his services so that such amount can be paid or otherwise adequately secured before the production order may be enforced." *Upgrade*, 87 Ill. App. 3d at 666, 410 N.E.2d at 162. Nowhere does the *Upgrade* decision state that the former attorney may bring a petition for adjudication of the lien or that the trial court has jurisdiction over such a petition.

■ Subject matter jurisdiction is the power of a court to hear and determine the general question presented to it and to grant the particular relief sought. *Cohen v. Salata*, 303 Ill. App. 3d 1060, 1063, 709 N.E.2d 668, 670 (1999), citing *In re M.M.*, 156 Ill. 2d 53, 64, 619 N.E.2d 702, 709 (1993). The Illinois Constitution of 1970 provides that circuit courts have "original jurisdiction of all justiciable matters" with a few limited exceptions. Ill. Const. 1970, art. VI, § 9. However, the *Needham* decision plainly stated that "equity has no jurisdiction to adjudicate a possessory or retaining lien." *Needham*, 191 Ill. App. at 258. Similarly, *Armstrong* reversed the circuit court's entry of a decree to foreclose a retaining lien on real estate to satisfy unpaid legal fees because a retaining lien cannot be actively enforced. *Armstrong*, 304

Ill. App. 537, 26 N.E.2d 670. While it is true that this rule may delay underlying litigation, the overriding concern is that a former attorney could use the retaining lien as a weapon when the materials subject to the lien are not indispensable to the former client, which presents an ethical dilemma for the attorney. See 79 Ill. B.J. at 275.

■ Moreover, the Act provides attorneys with a means of enforcing a lien on attorney fees. However, as stated above, the Act limits its scope to "any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice." 770 ILCS 5/1 (West 1992). This language does not apply to a retaining lien. *Needham*, albeit relying upon an earlier version of the same Act, stated that "a bill will not lie under this act to establish and enforce an attorney's lien upon the papers in the attorney's hands." *Needham*, 191 Ill. App. at 260. As a result, when we read both the case law and the statute, it is apparent that the circuit court should not have allowed Davidson Goldstein's petition.

■ Therefore, we hold that since plaintiffs have not yet sought production of the files in Davidson Goldstein's possession, the circuit court did not have subject matter jurisdiction over Davidson Goldstein's petition for adjudication of the retaining lien. Accordingly, we reverse the circuit court's order granting the petition.

## II

■ Plaintiffs next contend that Davidson Goldstein has waived its retaining lien by representing to the court that it would copy the documents in its possession for plaintiffs' new counsel, and also by filing its petition to adjudicate the lien. We disagree.

A retaining lien continues until the attorney receives payment of unpaid fees, the client posts adequate security for payment, or the attorney surrenders the materials subject to the lien. See *Mile Square*, 218 Ill. App. 3d at 677, 578 N.E.2d at 1078; see also *Upgrade*, 87 Ill. App. 3d at 665, 410 N.E.2d at 161. In fact, even the involuntary relinquishment of retained materials pursuant to a court order does not result in a loss of the lien. See *In re Estate of Miller*, 197 Ill. App. 3d 67, 72, (1990). None of the cases discussing retaining liens mention the concept of constructive waiver of the lien. For this reason, we rely on the plain language of the case law and find that any representation made by Davidson Goldstein that it would copy the documents for plaintiffs' new counsel did not result in waiver of the lien because it did not actually give up possession of the files.

Plaintiffs' second argument, that Davidson Goldstein waived the retaining lien by filing its petition, also fails. In *Intaglio Service Corp.*

*v. J.L. Williams & Co.*, 112 Ill. App. 3d 824, 445 N.E.2d 1200, a company refused to pay attorney fees to its former counsel and sought production of files still in the attorney's possession and subject to a retaining lien. Subsequently, the attorney and his firm filed a lawsuit to recover costs and fees. The company relied on *Ross* and argued in part that the lawyer waived his retaining lien once he filed his suit for fees. This court disagreed and refused to find that the lien had been waived. Specifically, the court explained that *Ross* "merely held that when an attorney files a suit for fees and the client contests the amount *** the client is entitled to discovery *in that action* because *** the attorney has a duty to produce the books and records in that action that directly bear on the claim for fees." (Emphasis in original.) *Intaglio*, 112 Ill. App. 3d at 832, 445 N.E.2d at 1205. But the court made clear that *Ross* never held that an attorney waives a retaining lien by filing a suit for fees. *Intaglio*, 112 Ill. App. 3d at 832, 445 N.E.2d at 1205. In the instant case, Davidson Goldstein has not filed a separate suit for fees and subjected any of the documents in its possession to discovery. Accordingly, although Davidson Goldstein improperly asserted its retaining lien, the firm did not waive the lien by filing its petition to adjudicate the lien.

### III

■ Plaintiffs' final contention is that the court's order of May 18, 1998, is an improper adjudication of debt because it serves as a final determination that plaintiffs owe Davidson Goldstein money, when in fact the fees are under dispute.

At the hearing on May 18, 1998, the court granted Davidson Goldstein's petition, ordered plaintiffs' to post $40,000 with the clerk of the circuit court as security for the retaining lien and set discovery and briefing schedules on the petition. When the court determined that plaintiffs should pay $40,000 into an account with the court, it specifically stated that it was taking Davidson Goldstein's word at face value for the purpose of security on the lien but its decision was "without prejudice to an adjudication of the amount of this money," and "if it's more or less, I will make that determination at the proper time, after Mr. Spak [plaintiffs' new counsel] has had a full opportunity to look into these matters."

On the basis of our analysis in part I, we find that the court should not have ordered plaintiffs to pay the $40,000 into an account with the court. The court lacked the jurisdiction to entertain Davidson Goldstein's petition, Davidson Goldstein was not a party in the pending litigation, the issue of attorney fees is still subject to dispute and plaintiffs have yet to formally request any of the documents over

which Davidson Goldstein is asserting its possessory lien. Therefore, until plaintiffs seek production of these documents, the court should not order payment of money into an account as security.

## CONCLUSION

The *Upgrade* decision is clear that former counsel who asserts a retaining lien in an effort to obtain compensation for legal services may only seek enforcement of the lien once the former client initiates proceedings to compel the production of files. The instant case does not present such facts because the plaintiffs never filed discovery requests with the court. As a result, we reverse the circuit court's decision to entertain the lien petition and reverse its order of May 18, 1998.

Reversed.

ZWICK, P.J., and CAMPBELL, J., concur.